### Schultz v. Smith's Adm'r.

December 1, 1950.

W. R. Prater, Judge.

W. W. Reeves for appellant.

D. G. Boleyn and Joe Hobson for appellee.

CHIEF JUSTICE SIMS—Reversing.

Mrs. Rosie Smith was struck and killed by a truck owned and driven by Daniel Schultz. Her administrator recovered $7500 damages against Schultz, who seeks a reversal of the judgment on six grounds, the first of which is that the court erred in not directing a verdict in his behalf. As we have decided this ground

is well taken, it will not be necessary to enumerate or discuss the other five, since there is little likelihood of additional and different evidence being introduced on a second trial.

The accident occurred in the village of Mousie, Knott County, between two and three o'clock on the afternoon of Oct. 6, 1948, on Highway 80. The highway ran in a general north and south direction through Mousie. The store of Hager Johnson was located on the west side of the highway and almost directly opposite his store was the store of Frank Moore on the east side of the highway. The highway was 20 feet wide and was being resurfaced and had been oiled that day so it would take a coating of black-top material referred to in the record as Amasite.

The deceased, Mrs. Smith, a 61 year old housewife, was standing on a porch or platform in front of the Johnson store talking to some friends, among whom was Frank Moore, the owner of the store just across the highway. A Jeep was parked in front of the Johnson store, and just as a large soft drink truck (12 or 14 feet long with a cab 7 feet high) drove up and parked near the Jeep at an angle with its front wheels off the pavement and its left rear wheels about 2½ feet on the pavement, Mrs. Smith walked around this parked truck onto the highway and was struck by Schultz' truck.

Schultz was driving a large, snub-nosed dump truck loaded with 18 tons of Amasite. He was following the soft drink truck (referred to in the evidence as the pop-truck) at a speed the several witnesses testified was from 12 to 20 miles per hour. There was no other traffic on the road except the pop-truck and the Schultz truck and the highway was straight and clear for 500 or 600 feet. When the pop-truck parked at an angle in front of Johnson's store, Schultz was either travelling on his left side of the road or else pulled to the left of the center of the road to pass the pop-truck. Mrs. Smith, so the evidence shows, lacked some 4 or 5 feet of reaching the east side of the highway when she was struck.

The three eyewitnesses to the accident, Frank Moore, Grady Combs and Dorothy Ritchie, were called as witnesses for appellee. Moore and Combs were with Mrs. Smith on or near the platform of the Johnson store,

while Mrs. Ritchie was across the road sitting on Elmer Hall's porch, which is next to Moore's store. The three testified to practically the same facts.

Moore testified the road was straight for 500 or 600 feet, had a shoulder 6 to 10 feet wide and he did not see the Schultz truck until it hit Mrs. Smith. She had said to him, "Frank, let's go over to your store." He replied, "I'm ready * * *. When she started out why I heard the noise of a car or something, I didn't see it for the pop-truck was between me and it, and I said, 'Watch the car,' and I turned my head back down the road and when I looked back across the road why she had started out, kinda in a run, across the road and this truck when I saw it, it come up past this pop-truck here and I saw the front end of it hit her * * *. I judged that where she was standing she liked about five feet or five feet and a half getting off the black-top over next to my store."

Combs testified he was in front of the Johnson store sitting on the bumper of Richard Church's automobile. He could not see the Schultz truck approaching but he heard it. When Mrs. Smith had gotten 2 or 3 feet on the black-top somebody hollered, "Watch the car. * * * Well, when they began hollering at her she walked out on it two or three feet * * * unbalanced herself when she started with a step and they was hollering; she looked back, unbalanced and started on across, trotting." The truck carried her about 30 feet. The witness did not see the Schultz truck until it was within 10 or 12 feet of Mrs. Smith. His impression was that the left front grill of the truck hit Mrs. Smith, but testified, "It's hard to say anything like that because things happen in just a thought, just like that (snaps fingers), and you don't have time to actually think." At another place in his testimony he said the accident happened "in just a bat of your eye," and the truck travelled the 10 or 12 feet to hit Mrs. Smith "in just a thought."

Mrs. Ritchie testified, "Well, she started and they was a pop-truck, a big one, and it was easing in off the black-top to Hager Johnson's store and she come around in front of the pop-truck and stepped out about two steps on the black-top and someone called and said, 'Don't go across.' Well, she paused. Just paused and then she run right into the truck. She didn't walk in it.

She run in it and I'll tell you she—the last time I saw her she was running, you know, running. I knowed it was going to hit her and she held her hands up like this (indicating), straight up and turned around, right in front of her, and it hit her." Mrs. Ritchie further testified the truck was travelling about 15 or 20 miles an hour.

Schultz testified he was travelling in third gear at 15 or 20 miles per hour, his brakes were good, his tires new and he was hauling 18 tons and his truck was 7½ feet wide. When he first saw Mrs. Smith she was 10 or 12 feet in front of his truck going around the pop-truck. "I saw a woman run out in the middle of the road and when she ran out there instead of going one way or another she turned right in the middle of the road and started back the way she come." Schultz testified he did not have time to blow his horn, threw on his brakes but could not stop and tried to dodge Mrs. Smith but does not know which way he turned. Mrs. Smith was struck on her right shoulder by the grill on the right front of the truck, which physical fact corroborates Schultz.

From this rather full resume of the evidence, it is manifest Schultz was guilty of no negligence. The accident happened when Mrs. Smith came around the pop-truck and could not and did not see the Schultz truck coming, nor could Schultz see her, until she was some 3 feet on the highway. At that instant Schultz was on the left of the road pulling around the pop-truck and was just 10 or 12 feet from Mrs. Smith. When her friends sought to warn her, she evidently became confused and attempted to run across the highway in front of the truck and in her confusion she stopped for an instant and turned around right in front of the truck.

As Combs, a witness for appellee, testified, the accident happened within a batting of an eye and there was nothing Schultz could do to avert the tragedy after he discovered Mrs. Smith's peril, and the court should have directed a verdict in his favor at the conclusion of all the evidence.

Appellee insists that Schultz violated KRS 189.300 and 189.340. The first of these sections prohibits a driver from travelling on his left side of the highway

unless it is clear of all obstructions and presents a clear view for 150 feet. This record shows there was no obstruction on Schultz' left of the highway and he had a clear view for a distance of 500 or 600 feet. The fact that Moore and others on or near the platform of Johnson's store had their view of the highway obstructed by the parked pop-truck, does not make KRS 189.300 applicable, as argued by appellee. This section plainly applies to the view of the driver rather than to one standing on the side of the highway. The authorities cited by appellee on this point, such as Lehman v. Patterson, 298 Ky. 360, 182 S. W. 2d 897, and Webb v. Adams, 302 Ky. 335, 194 S. W. 2d 515, have no application to the case at bar.

The other section, KRS 189.340, provides a vehicle overtaking another vehicle proceeding in the same direction shall sound its horn or other device before passing. Clearly, this section does not apply to the passing of a parked vehicle which had been proceeding in the same direction as the vehicle passing it but had come to a stop. Nor was Schultz negligent in not sounding his horn when he first saw Mrs. Smith 10 or 12 feet in front of his truck. At that instant she saw his truck, her friends were shouting warnings to her and a sounding of the horn by Schultz would have only added to the unfortunate woman's confusion. The facts in the instant case distinguish it from Fork Ridge Bus Line v. Matthews, 248 Ky. 419, 58 S. W. 2d 615, and Cook v. Gillespie, 259 Ky. 281, 82 S. W. 2d 347, relied upon by appellee.

The instant case is strikingly like Monroe v. Townsend, 308 Ky. 123, 213 S. W. 2d 803, where we stated KRS 189.410 does not require a motorist to sound his horn on every occasion when he is passing a parked vehicle. We there pointed out that the happening of an accident does not raise a presumption of negligence and it is incumbent upon the plaintiff to prove the defendant failed to exercise ordinary care and that such failure was the proximate cause of the accident. The record in the instant case shows there was no negligence on the part of Schultz before Mrs. Smith ran in front of his truck and that there was nothing he could have done to have averted the accident upon discovering this unfortunate woman's peril.

The judgment is reversed with directions to per-

emptorily instruct the jury to find for Schultz should the evidence upon another trial be substantially the same as shown in this record.