Regina **BENNINGFIELD** et al., Appellants,

v.

Joel Redman **DIXON** et al., Appellees.

Court of Appeals of Kentucky.

June 9, 1972.

Gary L. Gardner, Eubanks, Gardner & Schaefer, Louisville, for appellants.

James E. Bondurant, Hodgenville, for appellees.

EDWARD P. HILL, Jr., Judge.

Appellant Regina Benningfield lost, before a jury, in her action for damages growing out of a collision between the motorcycle of appellee Joel Dixon and the bicycle of appellant.

Appellant argues two questions in her brief, only one of which is deserving of more than a "first blush" consideration.

 The first argument must fail for the reason that it presents in this court a question that was not presented in the circuit court. Some time after appellant filed her notice of appeal, she moved this court to file a supplemental record showing she

made a motion for a new trial supported by the affidavits of two witnesses. The ground of the motion was that three of the jurors on the panel that tried the case were related by blood or marriage to the appellee Joel Dixon. Notice of appeal was filed November 14, 1969. The motion for a new trial referred to above was filed not in the circuit court, but in this court on January 7, 1971. This motion was overruled by this court by order of February 10, 1971. Appellant Regina Benningfield's position is unimproved by the retort that she attempted to file her motion and grounds and supporting affidavits with the circuit court and was overruled for failure to file in time and before the appeal was taken. See CR 73.02 and 73.03.

Appellant's second argument, which requires consideration on its merits, is that she was entitled to an instruction placing a duty on the appellee Joel Dixon to sound his horn. This question necessitates a brief statement of the facts and a review of the pertinent evidence.

The accident giving rise to this litigation occurred on Parker Grove Road, a two-lane, blacktop road in LaRue County, Kentucky, on July 26, 1967. It was a clear day and the surface of the road was dry.

Parker Grove Road has a number of small, sharp hills jutting up all along, two of which are in the area of the accident.

As the appellee Joel Dixon crossed the crest of the first hill, he passed Gilda Benningfield, sister of appellant Regina Benningfield, and her companion, Johny Heath, riding along in the direction in which Dixon was traveling on his motorcycle. Gilda was riding a bicycle and Johny was riding a small motorcycle.

At the time appellee Dixon passed Gilda and Johny, he observed, according to his own evidence, the appellant Regina and her companion, Mike Catlett, going over the top of the next hill, which was "around a tenth and a half or two-tenths of a mile away." The speed of Dixon, according to his own admission, was about twenty miles per hour as he topped the first hill, but by the time he crested the second hill, he was traveling "somewhere around thirty or thirty-five" miles per hour. As the appellee Dixon reached the top of the second hill, he observed the appellant, Regina Benningfield, and Mike Catlett on the downhill side. Mike had stopped his motorcycle on the left side of the highway, and according to all the evidence Regina was still on the blacktop surface of the road. Whether she had stopped her bicycle is in some conflict. Appellee Dixon says Regina was stopped, talking to Catlett; while Regina says that Mike "hollered" to her and told her that the motorcycle was approaching and for her to get out of the way. Regina says that she was in the process of moving her bicycle off the hard surface of the road when she was strick by Dixon's motorcycle. It makes little difference whether Regina was moving or sitting still immediately before the accident. For all practical purposes she was "stopped" on the traveling portion of the highway. Certainly she was not "traveling in the same direction" as Dixon within the meaning of KRS 189.340.

The statute (KRS 189.340) requires the operator of a vehicle overtaking and desiring to pass another vehicle traveling in the same direction to sound his horn before passing. This statute also requires the passing vehicle to "pass to the left" of the vehicle being passed. The statute has been construed as not requiring the sounding of the horn for vehicles parked on the shoulder of the road. Schultz v. Smith's Adm'r, 314 Ky. 198, 234 S.W.2d 676. The pertinent part of KRS 189.340 is quoted herewith: "The person operating or in charge of the overtaking vehicle shall sound his horn or other sound device before passing."

We find no recorded case in this jurisdiction requiring operators of motorcycles and bicycles to sound their horns before passing another vehicle. However, in

the light of KRS 189.080, we think it is an elementary proposition that operators of motorcycles and bicycles have the same duty to sound their horns in passing another vehicle as is required of operators of automobiles and other motor vehicles. We are supported in this theory by the very language of KRS 189.080(1), which is quoted herewith:

> "Every motor vehicle and bicycle, when in use on a highway shall be equipped with a horn or other device capable of making an abrupt sound sufficiently loud to be heard under all ordinary traffic conditions. Every person operating an automobile or bicycle shall sound the horn or sound device whenever necessary as a warning of the approach of such vehicle to pedestrians, or other vehicles, but shall not sound the horn or sound device unnecessarily."

So we conclude as a matter of law that the duty to sound a horn rests upon persons operating motorcycles and bicycles to the same extent as upon persons operating automobiles and other motor vehicles. The question is whether it was the duty of appellee Dixon under the facts and circumstances of the instant case to sound his horn before attempting to pass appellant Regina Benningfield. If so, the appellant was entitled to have the jury so instructed, and failure of the trial court to give such an instruction was prejudicial.

The statutory duty to sound his horn before passing another vehicle presupposes that a person under such duty has knowledge that he is about to pass another vehicle. Appellee Dixon had knowledge from his own observation and admission that appellant Regina and her companion, Catlett, had crested the second hill and had started down the other side. It is not shown in evidence how far the appellee Dixon could see as he approached the crest of the hill; but unless he had a vision ahead of less than 150 feet, he was under no duty to sound his horn for the benefit of persons whom he knew had recently crested the hill. Dixon was under no duty to anticipate that appellant Regina Benningfield would stop or slow down to a walk after cresting the hill.

It is concluded that under all the circumstances and facts of the instant case appellee Dixon was under no duty to sound his horn and that the trial judge properly declined to give such an instruction. As a matter of fact, it is extremely doubtful that appellee Dixon had sufficient time to sound his horn.

The judgment is affirmed.

All concur.