## Jefferson's Administratrix v. Baker et al.

(Decided December 10, 1929.)

L. V. ALEXANDER for appellant.

WHEELER & HUGHES for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The appellant, Lottie Bundesman, brought this action to recover for the death of her decedent, Maggie Lee Jefferson, caused by the alleged negligence of the appellee Claude B. Baker in the operation of an automobile he was driving for his father, the appellee Claude C. Baker. From a verdict and judgment in favor of the appellees, this appeal is prosecuted.

Broadway, in the city of Paducah, runs east and west. Kentucky street is the first parallel street to Broadway south of it. Ninth street runs north and south. At the time of her death, Maggie Lee Jefferson lived on Kentucky street between Ninth and Tenth, and worked as a cook for Miss Phillipa Hughes at Ninth and Jefferson, the latter street lying to the north of Broadway. Between 7 and 7:30 on the night of April 14, 1929, Maggie Lee Jefferson was proceeding south on the west side of Ninth street towards Broadway. It was raining hard. In the intersection of Ninth and Broadway there was an overhead automatic electric traffic signal. When it turned green for north and south bound traffic, Maggie Lee Jefferson stepped from the curb and started across Broadway. While Maggie Lee Jefferson was approaching Broadway from the north, the appellee Claude B. Baker, driving a Chrysler sedan, was approaching that street on Ninth street from the south. He had been over on Kentucky street, and intended to turn west on Broadway. He arrived at the intersection about the time the traffic light turned green for the north and south bound traffic, and at once made the left-hand turn so as to go west on Broadway. He gave no signal and did not sound his horn before, as, or after he made the turn. According to one witness, Maggie Lee Jefferson started out into

Broadway just as the automobile began the left-hand turn.

Broadway had been equipped with a "white way," and an electric street lamp was burning on each of the four corners. The witnesses all agree that the place was well lighted. In addition, the lights on the automobile were burning, and, as the automobile turned from the axis of Ninth street to the axis of the north street car track in Broadway, its lights, if of the kind prescribed by section 2739g24 of the Statutes, necessarily described an arc of 90 degrees, and necessarily swept the line of passage of Maggie Lee Jefferson as she was crossing Broadway. Yet the appellee Claude B. Baker says that he did not see her until he was within three feet of her, although he was keeping a lookout ahead. Probably the explanation of this lies in the fact that his windshield was covered with globules of rain, and that, because his windshield wiper was not working very well, as he admits, his vision was obscured. As the automobile straightened out on Broadway from the turn it had made from Ninth street, it struck Maggie Lee Jefferson, knocked her to the ground, ran over her, and was driven by the appellee Claude B. Baker to the curb. The witnesses vary as to the spot of the collision. The nearest it is placed to Ninth street is 15 feet, the furthest, 35 feet. Maggie Lee Jefferson was carried into the corner drug store, where she died in a very few minutes from the injuries she had sustained in the collision.

The main ground relied upon for a reversal is "error in instructions." In submitting the case to the jury, the court instructed the jury that it was the duty of the driver of the automobile at the time and place of the collision to have the car under reasonable control, to keep a lookout ahead for persons and vehicles using the street at that time and place, and to exercise ordinary care generally to avoid striking such persons. It refused to instruct the jury, as appellant requested, that it was also the duty of the driver to sound his horn and to give a signal with his hand before making the left-hand turn of his intention to do so. The appellant now insists that the court erred in failing to incorporate these last two duties in the instructions it gave. That the appellant was not entitled to have the duty of "signaling with the hand before making the left-hand turn" put in the in-

structions is clear. Section 2739g50 of the Statutes relied upon reads:

"Every person operating a vehicle on any public highway before turning, stopping or changing the course of such vehicle and before turning such vehicle when starting the same, shall see first that there is sufficient space for such change or turn to be made in safety, and if it appears that the movement or operation of another or other vehicles may reasonably be affected by such change shall give plainly visible signals to the operator of such vehicle of his intention to change, turn or stop by the use of his hand and arm or of an electrical or mechanical device approved by the commission, and shall use the following positions of the hand and arm in announcing his intentions:

"(1) Intention to turn such vehicle toward the right or toward the left shall be indicated by extending the hand and arm horizontally from and beyond the side of the vehicle toward which the turn is to be made, or by extending the hand and arm upwardly at an angle of forty-five degrees or greater from the horizontal from the side opposite the direction towards which the turn is to be made.

"(2) Intention to stop a vehicle or to abruptly or suddenly check its speed shall be indicated by extending the hand and arm out from and beyond either side of the vehicle in a downward direction at an angle of forty-five degrees or greater from the horizontal."

The duty of signalling enjoined by this section of the Statutes is for the benefit of other vehicles using the street, and has no application to a state of facts as is here presented.

Appellant, however, stands upon meritorious grounds when she argues that the duty of sounding the horn should have been incorporated in the instruction given the jury, although not in the absolute terms as requested by the appellant. Section 2739g28 of the Statutes reads:

"Every automobile and bicycle, when in use on a public highway, shall be equipped with a horn, bell or other device capable of making an abrupt sound

sufficiently loud to be heard under all ordinary conditions of traffic, and every person operating an automobile or bicycle shall sound said horn or other sound device whenever necessary as a warning of the approach of such vehicle to pedestrians, or other vehicles, but shall not sound said horn or sound device unnecessarily.''

This section has been construed a number of times by this court to put upon the driver of the automobile the duty not of sounding his horn on all occasions, but only when the circumstances require it to be sounded. Wener v. Pope, 209 Ky. 553, 273 S. W. 92; White Swan Laundry v. Boyd, 212 Ky. 747, 279 S. W. 345. Although the appellant requested an instruction putting upon the driver of the automobile the absolute duty of sounding his horn on the occasion in question, and, although the statute did not put such a duty upon the driver, yet, as appellant had called the court's attention to this matter, the court was required to give such an instruction on the question as the appellant was entitled to.

Did the facts and circumstances of this case call for an instruction about sounding the horn, and was the failure to give it, if required, prejudicial error? We think both questions must be answered in the affirmative. The night was dark and rainy. Although the appellee Claude B. Baker was driving his car at a reasonable rate of speed, and was, as he says, keeping a lookout ahead, he did not see Maggie Lee Jefferson until he was almost upon her. That his lookout was not effective is manifest, because the uncontradicted evidence is that Maggie Lee Jefferson stepped from the curb on Broadway out into the street as the automobile began the left-hand turn. The collision took place on the north-bound car track in Broadway, the north rail of which is 13 feet from the curb from which she stepped. She had walked before the collision something more than this 13 feet, however, as the collision occurred from 15 to 35 feet west of the line of Ninth street. The jury could reasonably have concluded from these circumstances that she walked steadily, relying no doubt, as pedestrians do rely, on the protecting red rays of the traffic signal guarding east and west bound traffic on Broadway.

The appellee knew his windshield wiper was not working well. He says he did not see Maggie Lee Jefferson until he was right upon her. From this, the jury could have concluded reasonably that the raindrops on the windshield obscured the vision. The driver knew this was an intersection where pedestrians were to be anticipated, and further that, if there were any there, they would assume they were protected by the red light of the traffic signal showing up and down Broadway. He knew that he was about to turn into this zone assumed to be safe by pedestrians, and at a time when he knew, as the jury could have well found, that his vision was obscured. That under all these circumstances it was for the jury to say whether or not it was necessary for him to sound his horn is manifest to us.

It is argued, however, that Maggie Lee Jefferson was not on the crossing, but to the west of it, and hence her presence at the point of collision was not to be anticipated. However, the jury was authorized to believe that she was so near the crossing as that her presence should have been anticipated. It is well known that pedestrians do not cross at intersections exactly on the crossing, and that they vary from a direct to an oblique crossing is not unusual or extraordinary.

We are also convinced that the failure to give the instruction concerning the sounding of the horn was prejudicial in this case. The jury could have well believed, not only that under the circumstances of this case the horn should have been sounded, but also that had it been sounded, Maggie Lee Jefferson's attention would have been called to the fact of the approach of the automobile, and she would have avoided the collision. The jury would have been warranted in believing that she thought she was safe due to the red traffic light, and that a sounding of the horn of a machine entering into her zone assumed by her to be safe would have dispelled that idea, and that, had it been, the collision could have been avoided. Thus we see these questions were for the jury.

For the failure of the court to so instruct, the judgment is reversed, with instructions to grant the appellant a new trial in conformity with this opinion