Mary H. BARKER, Appellant,

v.

Orean Everett SANDERS, Appellee.

Court of Appeals of Kentucky.

June 16, 1961.

C. M. Leibson, Julius Leibson, Louisville, for appellant.

Jack Q. Heath, Roger Vincent, Louisville, for appellee.

PALMORE, Judge.

The appellant, Mary Barker, either collided with or was struck by a truck driven by the appellee, Orean Everett Sanders, as she was walking across Second Street at its intersection with St. Catherine Street in Louisville, Kentucky. Her suit against Sanders for damages on account of personal injuries thereby suffered resulted in a ver-

dict and judgment for the defendant, and she appeals.

The two streets mentioned intersect at right angles. Each is 40 feet wide and consists of four traffic lanes. Second Street is one-way for northbound traffic and St. Catherine is one-way for westbound traffic. There is a traffic light at the intersection. Mrs. Barker lives on the west side of Second Street several houses north of St. Catherine. On the afternoon in question she had walked from her home southward along the west sidewalk of Second Street to the northwest corner of Second and St. Catherine, from which point she undertook to cross Second Street from west to east in the north crosswalk of St. Catherine. When she had traveled some five or six steps on Second Street, a distance of approximately 12 feet, she either ran into the left side of the northbound Sanders vehicle or else was struck by its left front corner, depending on whether her version or that of Sanders is correct.

Mrs. Barker testified that when she arrived at the corner the light was green for Second Street traffic and that she waited several seconds until it turned green for St. Catherine and red for Second. When the light turned she looked to the south and saw vehicles in the second, third and fourth lanes (counting west to east) of Second Street. Those in the third and fourth lane pulled up and stopped. The Sanders truck, in the second lane, was approaching but was still some 30 feet south of the south crosswalk of St. Catherine Street. It was moving at a "moderate" speed. Assuming that Sanders would stop in obedience to the traffic light, she started across Second Street and directed her attention eastwardly up St. Catherine Street for westbound vehicles that might cross her path by turning north into Second Street off St. Catherine. She did not look southward after leaving the curb and did not again see the Sanders truck before the collision.

The version given by Sanders is somewhat different. He said the light was green for Second Street when he entered the intersection of St. Catherine at a speed of 15 to 20 M.P.H. and that his truck was within 10 to 15 feet of the north crosswalk (or a "couple of feet" beyond the traffic light hanging over the center of the intersection, which would make it 18 feet) when he saw Mrs. Barker "coming off" the curb at a rapid gait. He applied his brakes immediately but was unable to stop before intercepting her line of travel in the north crosswalk, and she ran into the side of the truck at the point where the rear-view mirror was attached to the door. Sanders got his foot on the brake at about the same moment as the impact. He was unable to swerve to the right because, contrary to the testimony of Mrs. Barker, there was another vehicle moving alongside him in the next lane to his right. Mrs. Barker was one and one-half to two feet into his traffic lane when they collided.

It is agreed that Sanders did not sound his horn. He said that he did not have time to do so, "It was done so quick I never thought about having a horn."

■ The first point raised by appellant is that she was entitled to a last clear chance instruction. For the reasons fully set forth in Severance v. Sohan, Ky.1961, 347 S.W.2d 498, the theory of last clear chance is not applicable under the facts of this case.

The second contention is that the sounding of his horn, if necessary in order to warn Mrs. Barker of his approach, should have been included in the instruction enumerating the duties of Sanders, the driver of the vehicle. See, for example, Trainor's Adm'r v. Keller, 1935, 257 Ky. 840, 79 S.W.2d 232; Jefferson's Adm'x v. Baker, 1929, 232 Ky. 98, 22 S.W.2d 448.

This raises a fundamental question on which there has been considerable confusion, not only in our own opinions but in those from other jurisdictions. In a case involving which party had the right-of-way, neither being incapable of negligence (as, for example, an infant) and there being

no other real issue as to causation or last clear chance, how can there be any question except as to which party had the duty to yield? This case is an example. If the pedestrian had the green light when she stepped from the curb it was the absolute duty of the motorist to yield. (In this connection, if both parties started into the intersection at the exact moment the light changed we deem it that considerations of humanity, and therefore the law, would accord the pedestrian the superior right.) If it was the absolute duty of the motorist to yield, why confuse the jury with talk of ordinary care, keeping a lookout, having the vehicle under control, stopping, slowing, altering course, sounding the horn, etc.? If he did not have the right-of-way but nevertheless came into contact with the pedestrian he was negligent anyway, regardless of whether he kept a good lookout, kept his vehicle under control, stopped, slowed down, swerved, blew his horn, or took any number of other preventive measures. The duty to yield covers them all. By the same reasoning, if the pedestrian did not have the right-of-way, under the facts of this case she was per se negligent herself, and therefore cannot recover; and again, this is true regardless of what particular steps she may have taken for her own safety and regardless of how negligent the motorist may have been.

■■ It is a logical conclusion that in any case where the issue of liability can be reduced to whether one party or the other had the right-of-way it is unnecessary to instruct on any duty except simply that of yielding. In this case it is obvious that if Mrs. Barker did not have the green light her own negligence proximately contributed to the accident. It seems equally clear to us that if she did have the right-of-way she was not contributorily negligent. (We do not, however, imply that there may not be cases in which a pedestrian can be found contributorily negligent even though he had the right-of-way.) The evidence creates no further issue such as proximate cause

or last clear chance, and neither party is or could be found incapable of negligence. Thus it was unnecessary for the court to instruct on the sounding of the horn and likewise unnecessary to make reference to the various other duties of the respective parties (including the driver's duty to stop, slow down, or swerve in order to yield to the pedestrian's superior right-of-way) enumerated in the instructions.

We are aware that what we have said here is not consistent with such cases as Murphy v. Homans, 1941, 286 Ky. 191, 150 S.W.2d 14; Linder v. Davis, 1949, 309 Ky. 668, 218 S.W.2d 673; and Pryor's Adm'r v. Otter, 1937, 268 Ky. 602, 105 S.W.2d 564 (see Stanley's Instructions, § 98). There are others of a borderline nature, such as Pillsbury-Ballard v. Scott, Ky. 1955, 283 S.W.2d 387; and Ashton v. Roop, Ky. 1951, 244 S.W.2d 727, that are or may be distinguishable as involving substantial questions of proximate cause. One thing, however, is certain: in cases where the question of liability ultimately boils down to the matter of right-of-way, the giving of instructions listing duties other than the duty of each party to yield under facts giving the right-of-way to the other makes complex that which ought to be simple and readily understandable to the jury. Therefore, in future cases in which the fact situation is comparable with this one the instructions on liability should be to the simple effect (1) that if at the time the pedestrian entered the crosswalk the green light was in his favor the jury shall find for him, unless at the time he entered the crosswalk the defendant's vehicle had already entered the intersection while the green light was in its favor, in which latter event the jury shall find for the defendant; and (2) that if at the time the defendant's vehicle entered the intersection the green light was in its favor the jury shall find for the defendant, (a) unless the plaintiff had already entered the crosswalk while the green light was in his favor, or (b) unless both parties entered the intersection simultaneously with the change of the light, in

either of which latter events (a) or (b) the jury shall find for the plaintiff.

 The appellant takes issue with the phraseology of the instruction giving her the right-of-way if she was *crossing with the green light*, as distinguished from her having *entered* the crosswalk with the green light. As we see it, the instruction was more favorable to Mrs. Barker than it should have been. It would be otherwise had there been any evidence indicating that the light changed from green to red after she had started across. That, however, was not the case. According to her testimony, she left the curb immediately when the light turned green, in which event obviously it did not have time to change again during her brief journey of 12 feet. On the other hand, from the standpoint of Sanders, the evidence would support an inference that Mrs. Barker left the curb prematurely, before the light changed; and the instruction as it was phrased is susceptible of the interpretation that, even so, if she had the green light by the time she was struck it was Sanders' duty to yield. Therefore, the theoretical error in form could have been prejudicial only to Sanders, and not to Mrs. Barker.

Briefly with respect to the other matters of controversy raised on the appeal, our opinions are:

 (1) The previous injury of Mrs. Barker was a proper subject of cross-examination, that being a legitimate instrument of testing whether the pre-existent condition did in fact contribute to her residual disability following the injuries sustained in the accident with Sanders.

 (2) It was proper for Sanders to give his occupation as a school bus driver, but not to specify the number of years he had driven a school bus. However, we must presume that the jury exercised a reasonable amount of common sense, and we cannot say this trivial error was prejudicial.

 (3) After the jury was sworn and a separation of the witnesses ordered, a man in the audience stood up and announced that he had come to testify to the defendant's good character, and asked if he too had to leave the room. Again invoking the presumption mentioned in the preceding paragraph, even if appellant had moved to discharge the jury we could not find in this incident any substantial prejudice.

As we find no prejudicial error, the judgment is affirmed.