James William **RILEY**, Executor of the Estate of Stephen Silas Riley, Deceased, Appellant,

v.

Alvin O. **HORNBUCKLE**, Appellee.

Court of Appeals of Kentucky.

March 1, 1963.

Rehearing Denied April 26, 1963.

Joseph Davis, Louisville, for appellant.

Kenneth L. Anderson, Fielden Woodward, Woodward, Hobson & Fulton, Louisville, for appellee.

PALMORE, Judge.

Watterson Expressway is a limited access by-pass highway skirting Louisville on the south and east. Traffic moving in opposite directions is separated by a median strip, with two lanes on each side except for entrance and exit points, where the road widens to three lanes for short distances to facilitate the flow of interchange traffic. An ordinance of the City of Louisville prohibits and makes punishable, with certain exceptions, the intrusion of pedestrians on the vehicular thoroughfare of the expressway. Stephen Silas Riley, an 80-year old man, was struck and killed by an automobile driven by the appellee, Alvin Hornbuckle, as he was attempting to walk on or across the east-bound portion of this highway. His personal representative's suit for wrongful death resulted in a directed verdict of dismissal following the opening statements of counsel.

■ Though several pre-trial depositions had been taken and filed (which could properly have been considered had the motion for a directed verdict been treated as a motion for summary judgment), it is clear that the trial court's action rested entirely on the opening statement of counsel. Hence appellee is technically correct in his contention that the depositions have no place in this review. However, it really makes no difference, because a directed verdict at this stage of the proceedings is never based on the mere insufficiency of the opening statement to support a case, but always upon the presence of admissions that are fatal to the case. In short, a directed verdict is made proper not by what the opening statement fails to say, but by what it does say. And this being true, if an opening statement contains something fatal to the plaintiff's case, that circumstance would not be altered by the supplementary effect of depositions theretofore taken.

■ We do not mean to imply that a mistake in the opening statement could not be corrected, but this ordinarily would be accomplished by a further statement of counsel made to the jury by permission of the court before the motion for directed verdict is sustained and the order carried out.

Counsel's opening statement for the plaintiff disclosed that the accident occurred on the east-bound portion of the expressway near the island separating the exit to and entrance from Second Street. Hornbuckle, driving eastward, entered the expressway from Third Street, several hundred feet west of the point of impact. The entire area was well lighted, and it is claimed that he had an unobstructed view all the way. In fact, as he got onto the expressway he noticed another automobile entering at the Second Street interchange. There was no traffic between. This automobile ahead of him appeared to be moving slowly, so Hornbuckle began to veer his own vehicle toward the left or passing lane, and traveled astraddle of the white line dividing the two traffic lanes for a distance of 400 to 500 feet until he struck Riley. (At this stage of the opening statement counsel pointed to one of the pictures in the record in fixing the place in the highway where Riley was

run down, and although we do not have any supernatural powers enabling us to ascertain where he was pointing, from the briefs and from the other circumstances of the case there can be little doubt that it was on or very nearly on the white line marking the center of the two east-bound lanes.) According to the opening statement Riley was, despite his age, alert and spry, and Hornbuckle had defective vision.

The trial court gave a peremptory on the ground that Riley was negligent per se in being on the highway afoot in violation of the ordinance and that such negligence was a contributing cause of the accident.

We are of the opinion that if counsel had admitted in his opening statement that Riley's presence on the highway did not fall within one of the exceptions enumerated in the prohibitive ordinance it would have been proper for the court to take the issue of contributory negligence from the jury. Appellee's point that this is the very type of accident the ordinance was designed to prevent is well taken. It is no answer to say that the accident would have occurred even if Riley had been on the road for a legitimate reason, and that hence the violation of the ordinance was not a proximate cause. It is obvious that in either event his presence afoot on the highway would have been a proximate cause. The difference is that in the one case the ordinance makes it negligent and in the other it does not.

The issue of proximate cause does not enjoy any special exemption from the rule that if there can be no difference of opinion among reasonable minds a question of fact is resolved as a matter of law. Ashton v. Roop, Ky.1951, 244 S.W.2d 727, and other decisions cited by the appellant represent instances in which, under the particular facts of each case, the question of whether the act or omission constituting a violation of law actually contributed to the accident, or was merely a coincident circumstance, was not sufficiently free of doubt to be re-solved as a matter of law. In this case we think it is utterly clear.

Nor do we find validity in appellant's argument that there is a "presumption" that Riley's presence on the highway was lawful. A similar or at least kindred contention was examined at length in Louisville and Nashville Railroad Co. v. Fisher, Ky.1962, 357 S.W.2d 683, 688, and we concluded that the "presumption" theory is a fallacy unless it be considered just a clumsy way of saying that a person's conduct is free of liability in the absence of proof that he did something wrong. The real questions here are whether, in view of the several exceptions contained in the ordinance, Riley's unexplained presence on the highway is evidence of negligence and, if so, whether in the absence of further evidence tending to bring it within the exceptions it is conclusive. The answer to both of these questions is yes. It being the purpose of the enactment to keep pedestrians off the expressway unless they have a good and valid excuse to be there, public policy casts the burden on him who claims the exception. Cf. Smith v. Sizemore, Ky.1957, 300 S.W.2d 225, 228; Banner Transfer Company v. Morse, Ky.1954, 274 S.W.2d 380, 381; Bosshammer v. Lawton, Ky.1951, 237 S.W.2d 520.

The fact is, however, that the opening statement did not admit the absence of a valid excuse, under the ordinance, for Riley's presence on the expressway. And however unlikely it may be that appellant could have produced any evidence in that respect, who can say that it was not possible? Until the plaintiff rests his case he is entitled to gather more evidence, and even to hope for miracles. Suppose, for example, that an undiscovered witness should first learn of the lawsuit on the eve or very day of the trial, and go to the court house with evidence tending to prove that the victim of the accident had been on the highway "in an emergency or under conditions beyond his control necessitating foot-travel" (that being one of the exceptions

mentioned in the ordinance). This sort of thing occurs more often in the world of theater and television than in real life, of course, but neither we nor the trial court can presume to say it will not happen in any given instance. It was therefore premature, and in error, for the court to preempt the issue of contributory negligence.

 There is yet another and more important reason why a directed verdict was not proper in this case. It is true, as observed in Severance v. Sohan, Ky.1961, 347 S.W.2d 498, 501, that over the years the last clear chance doctrine has been trimmed to a narrower (and, we believe, more accurate) basis. But it is not the intention of the court that this process be extended to the vanishing point, nor do we intend to hold that the rule will apply only where the party in peril is unconscious, crippled, fettered or otherwise in a helpless condition. While we do not withdraw in any respect from the principles stated in Saddler v. Parham, Ky.1952, 249 S.W.2d 945, a majority of the court today feels that under the facts of that case the last clear chance issue should have been submitted to the jury. If it is to have any real effect as a humanitarian policy, we think the doctrine must be held applicable to the situation in which (as in the Saddler case) there is evidence that a pedestrian who was within the intended path of travel of an oncoming vehicle remained in that area of peril, with nothing to prevent the driver's seeing him, long enough for the vehicle to move a distance of several hundred feet. When this occurs, there is usually a point in time at which the curtain closes on the ability of the pedestrian to get out of the way of a faster-moving vehicle while it yet remains open for the driver to shift his course. Whether that interim constitutes a "clear" chance ought to be left to the jury.

Severance v. Sohan, Ky.1961, 347 S.W.2d 498, is distinguishable on the facts. Mrs. Severance was never in the projected path of travel of the Sohan car until she stepped into it a moment before the accident. Mr. Riley, however, was within the east-bound thoroughfare at least long enough to walk across one lane and reach the center of the two lanes, during all of which time he was in a position of peril from any east-bound vehicle, and particularly from one whose driver chose to drive down the middle and use both lanes at once. As to his possible opportunity to avert the accident by moving out of the way, if the preliminary statement proves to be an accurate representation of the facts, surely it must be recognized that once he reached the center line he was in an acutely disadvantageous position in that he could not have known, as the car bore down on him, whether it would move to the right lane, or to the left lane, or would continue a straight course astride the center line.

We feel that the factual situation outlined in the plaintiff's opening statement rather distinctly indicates the issue of last clear chance, this case being stronger in that respect, for example, than Ellis v. Glenn, Ky. 1954, 269 S.W.2d 234, in which the doctrine was held applicable. But even if it were questionable, certainly there was nothing in the statement to negate or foreclose the existence of an issue for the jury in that respect. As we have said, a directed verdict on the basis of the opening statement must depend on what it contains, not on what it omits.

The judgment is reversed with directions that appellant be granted a new trial.