Ida HOPPER, Administratrix of the Estate of Dewey Clay Hopper, Deceased, Plaintiff-Appellant,

v.

Lawrence E. REED, Defendant-Appellee.

No. 15124.

United States Court of Appeals
Sixth Circuit.

July 30, 1963.

R. J. Turley, Lexington, Ky., for appellant.

Julian W. Knippenberg, Lexington, Ky. (Boehl, Stopher, Graves & Deindoerfer, Lexington, Ky., on the brief), for appellee.

Before CECIL, Chief Judge, WEICK, Circuit Judge, and McALLISTER, Senior Circuit Judge.

CECIL, Chief Judge.

This action was brought under the Kentucky Wrongful Death statute. Jurisdiction of the District Court for the Eastern District of Kentucky was invoked by reason of diversity of citizenship. The case was tried to a jury and a verdict and judgment for the defendant-appellee resulted. This appeal followed. The parties will be referred to as plaintiff and defendant as they were in the trial court.

On July 29, 1960, the defendant was driving south on U.S. highway 25, through Richmond, Kentucky. Just south of the city limits, he struck and killed Dewey Clay Hopper, a five-year old boy and the plaintiff's decedent. Dewey's parents worked at a fruit stand which was just outside the southern limits of the city and on the west side of the highway. There was a Peer Service Station on the east side of the highway one hundred feet south of the city limits. At the time of the accident, Dewey's mother was working at the fruit stand. Dewey had gone across the road, without his mother's knowledge, to get a bottle of pop and some crackerjack. He stood on the east side of the highway, drinking his pop, until the northbound traffic cleared. He then started to walk or run toward the west side of the highway and at a point somewhere between the middle of the road and near its west side, he was struck by the defendant's car. Before Dewey started to cross the road, Mr. Hopper, the boy's father, drove up in a truck which he parked off the road, heading north, in the service station drive, just north of the station. He stayed in the truck, from which position he witnessed the accident. The defendant had stopped for gas at a Gulf Service Station which he estimated to be about two-hundred-fifty feet north of the scene of the accident and at the time of the accident, he was driving about twenty-five or thirty miles per hour.

The highway is four lanes wide in the city but narrows down to two lanes south of the city limits. The road has a concrete surface and at the place involved in this accident, it was straight and level. At the time of the accident, the road was dry, the weather fair and the visibility good.

■ One of the assignments of error is the refusal of the trial judge to allow the introduction into evidence of certain photographs. There were two series of these photographs, each one consisting of seven views of the highway taken from a 1957 Chevrolet automobile at various intervals, beginning at a point four hundred feet north of the city limits and extending south to a point fifty feet south of the city limits. The series were identical, except that one of them showed a truck placed in the drive of the Peer Service Station, at a place alleged to be in the position of Mr. Hopper's truck on the day of the accident. These photographs were taken one week before the trial and fourteen months after the accident.

A question arises whether the series which showed the truck placed at the service station was inadmissible because the truck was placed in its position solely for the purpose of the photographs. The general rule as to posed photographs, as indicated by the Kentucky cases,[1] seems to be that if a scene can be accurately reproduced, the photographs are admissible.

We agree with the ruling of the District Judge in refusing to allow the in-

1. Bowling Green Gaslight Co. v. Dean's Ex'rx, 142 Ky. 678, 134 S.W. 1115; Welch v. L. & N. R. R. Co., 163 Ky. 100, 173 S.W. 338; Nunnelly's Adm'r v. Muth, 195 Ky. 352, 242 S.W. 622, 27 A.L.R. 910; Cincinnati, N. O. & T. P. Ry. Co. v. Duvall, 263 Ky. 387, 92 S.W.2d 363; Square Deal Cartage Co. v. Smith's Adm'r, 307 Ky. 135, 210 S.W.2d 340.

troduction of either series of these photographs. The apparent purpose of counsel for the plaintiff in offering these photographs was to graphically portray what the defendant could have seen from his car as he approached the scene of the accident. At the time of the accident, there was traffic on the highway. There is testimony that Dewey waited until the northbound traffic cleared before he started to cross the highway. Obviously, the defendant would have met this traffic as he proceeded south from over four hundred feet from the point of the accident. The pictures show none of this traffic. Dewey was standing on the east side of the road and at some point, as the defendant approached, he started to cross. These pictures cannot recreate this scene. They would have been misleading to the jury.

It would have been proper to have introduced pictures of the highway showing its condition at the time of the accident for a reasonable distance on each side of the place of the accident. One such picture, exhibit 13, taken at the time of the two rejected series and by the same photographer was admitted. Pictures taken by an officer of the State Highway Patrol, at the time of the accident, were introduced. These pictures showed the highway in the vicinity of the accident. In addition, there was ample oral testimony describing the highway and its condition. Furthermore, no substantial rights of the plaintiff were affected. Rule 61, Federal Rules Civil Procedure.

■ Another assignment of error is that the trial judge erred in not instructing the jury on the duty of a motorist to sound his horn as he approaches a small child standing on or near the highway.[2] Section 189.570(4) (d) of Kentucky Revised Statutes provides in part, " * * * every operator of a vehicle * * * shall give warning by sounding the horn when necessary and shall exercise proper pre-

caution upon observing a child * * * upon a roadway."

The testimony of the defendant is that he was travelling at about twenty-five or thirty miles an hour and he first saw Dewey when he was within ten feet of him. At that time the child was about in the center of the highway. He immediately slammed on his brakes and swerved to his left in an attempt to avoid hitting him. This is the only testimony on this subject. It would have been futile to have sounded the horn at the time the defendant first saw the child. The purpose of sounding a horn is to warn one of approaching danger. The danger was imminent when the defendant first saw the child and he could do no more than try to avoid the accident. In Gish v. Scott, 345 S.W.2d 490 (Ky.), the court said: "The evidence shows that as soon as she saw Gish the defendant applied her brakes and swerved to the right in an effort to avoid striking him. Had she sounded her horn at the same moment it would have been of no efficacy because it would not have afforded Gish any real opportunity to take proper action to evade being hit. The sounding of a horn can serve no effective purpose to warn a pedestrian unless there is sufficient time available after the warning to enable the pedestrian to take advantage of it." Id. 345 S.W.2d at 490–491. See also Jordon v. Clough, 313 S.W.2d 581 (Ky.).

■ The crucial question here is whether the defendant, in the exercise of ordinary care, could have seen the child standing on the side of the roadway at a time when sounding the horn would have been effective and when he could have anticipated the child's intention and avoided the accident. The trial judge instructed the jury that it was the defendant's duty to keep his car under control and to keep a lookout for persons on the highway or so near thereto as to be in danger of collision with his automobile. If the defendant, in the exercise

2. "4. To give reasonable and timely warning of the approach of his automobile, if you believe from the evidence that it

was necessary, to warn Dewey Clay Hopper of the approach of defendant's automobile."

of ordinary care, could have seen the child standing on the roadway before he started to cross and in time to have warned him or to have avoided the accident and he failed to see him, he was not keeping a proper lookout and this would have been negligence under the instructions given. We think the judge's instructions adequately covered the situation under the facts as shown by the testimony.

Counsel for the plaintiff claims that the trial judge erred in not giving his instruction No. 3,[3] relative to the negligence of Dewey Clay Hopper. There was no issue in the case concerning his negligence. No claim was made that he was negligent. The requested instruction would have been a negative one and was not directed to any issue in the case. We find no error in this respect.

Finally, the plaintiff claims that the court erred in not requiring the jury to answer the third interrogatory which presented the issue of last clear chance. The trial judge submitted the case to the jury on five interrogatories, three of which involved the matter of liability. The first interrogatory presented the various elements of negligence of the defendant which were issues in the case. The second one concerned negligence of the parents of the child. The third interrogatory was on the issue of last clear chance. The trial judge instructed the jury that if it answered Interrogatory No. 1 "No," it need not answer any of the other ones. The jury did answer the first one "No."

This being a diversity case, we are bound to follow the law of Kentucky.

Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The rule of last clear chance in Kentucky is that a contributorily negligent plaintiff may recover not only if his peril was discovered but, if, in the exercise of reasonable care, it could have been discovered by the defendant in time to have enabled him to avoid the accident through the exercise of ordinary care. Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758, 760.

There is testimony that the defendant was approximately one hundred or more feet away from the point of the accident at the time that Dewey started to cross the road. The question is a close one but we believe a jury question was presented.[4] Could the defendant, in the exercise of ordinary care in keeping a proper lookout, have seen the boy as he started across the road in time that by the exercise of ordinary care he could have stopped his automobile, slackened its speed or changed its course and avoided the accident?

The first interrogatory encompassed all of the elements of negligence that were issues in the case—speed, keeping "a lookout ahead of his automobile for persons on the highway or so near thereto as to be in danger of injury by collision with his automobile," reasonable control of his automobile, and "that defendant otherwise failed to exercise such care in the operation of his automobile as an ordinarily prudent person would have exercised under the same or similar circumstances to avoid such collision."

In Swift & Co. v. Thompson's Adm'r, above cited, the court said, quoting from

3. "It is a basic and traditional concept that children of such tender years as not to have the capacity, mental and physical, of apprehending danger and exercising care for their own safety are presumed to be civilly irresponsible for their acts and are not chargeable with contributory negligence. This legal presumption is conclusive in its application to a child under 7 years of age. Therefore, the jury will not take into consideration in its deliberation or its verdict the failure, if any, on the part of Dewey Clay Hop-

per to exercise ordinary care for his own safety; and the jury will make its verdict under either Instruction No. 1 or Instruction No. 2, without taking into account the negligence, if any, on the part of the decedent, Dewey Clay Hopper."

4. Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758; Louisville & N. R. R. Co. v. Cornett's Adm'r, 237 Ky. 131, 35 S.W.2d 10; Weintraub v. Cincinnati, N. & C. Ry. Co., 299 Ky. 114, 184 S.W.2d 345; Ramsey v. Sharpley, 294 Ky. 286, 171 S.W.2d 427.

Hewitt's Adm'r v. Central Truckaway System, 302 Ky. 459, 464, 194 S.W.2d 999, 1001: " 'when the last clear chance rule makes its entry on the stage, all antecedent negligence of either party retires from the case * * *.' " We are of the opinion that when the jury answered the first interrogatory "No," it not only negatived all questions of antecedent negligence of the defendant but it negatived any question of the failure of the defendant to use ordinary care to avoid the accident. The jury by its answer to the interrogatory found that the defendant was keeping a lookout for persons on the highway or so near thereto as to be in danger of being struck by his automobile, that he had his car under control and that he did not fail to use the care that an ordinarily prudent person would have used to avoid the accident.

We are of the opinion that the trial judge was correct in his instructions to the jury on answering the interrogatories.

The judgment of the District Court is affirmed.