Robert WORRIX, Appellant,

v.

Clinton ROWE, Administrator of the Estate
of Clinton Gregory Rowe et al., Appellees.

Court of Appeals of Kentucky.

Feb. 16, 1968.

E. R. Hays, Baird & Hays, Pikeville, for appellant.

Fred B. Redwine, Sanders & Redwine, James B. Todd, Pikeville, for appellees.

DAVIS, Commissioner.

On August 24, 1965, about 7:45 p. m., an automobile driven by Robert Worrix struck and killed three-year-old Clinton Gregory Rowe and injured his mother, Glenda Kay Rowe. The tragic accident occurred on U. S. Highway 460 about eight miles south of Pikeville in the community known as Garden Village. The jury's verdict was in the sum of $9,750 for the estate of the child and in a like amount for the personal injuries and expenses of Mrs. Rowe. The only issue presented on the appeal is whether the defendant-appellant was entitled to a directed verdict.

Treating U. S. 460 as running in a north-south direction, Worrix was driving northwardly in the right traveling lane for traffic proceeding in that direction. Mrs. Rowe and her small son had crossed from their residence on the east side of the road to a grocery on the west side shortly before the accident occurred. Mrs. Rowe did not undertake to testify concerning the details of the accident, explaining that her memory of the events had been obliterated by the tragic shock she suffered. Mrs. Adams, proprietor of the grocery, testified that she observed Mrs. Rowe and the child as they left the store and prepared to cross the

highway. In her own words, Mrs. Adams graphically described the events:

"Well, she had been over there at the store and started out, her and the baby, was standing out there and— * * *. They was one car had passed and me and —I started around the counter to come out and I heard Kay holler, 'Wait Greg,' and when I looked up she was reaching after the baby, took across the road reaching after the baby, and I don't know —I guess I turned my head fur it shocked me, but I looked up the road before I did that, now, before the lick hit, I looked up the road for the lights to see, you know,. if they was something a-coming and when I heard her holler, 'Wait, Greg,' I looked up to see if they was anything coming, and when I looked I saw these car lights and that kinda shocked me, I guess. I heard the lick but I don't believe that I seen it, now."

Mrs. Adams was unable to estimate how far away the Worrix car was when she first saw it. In describing the visibility, Mrs. Adams vividly stated, " * * * h'it was coloring fur dark."

The only other eye witnesses were Mr. and Mrs. Worrix. Mr. Worrix testified that he was driving at a speed between thirty-five and forty miles per hour and that he had not seen the little boy or Mrs. Rowe as either of them approached the highway. As he expressed it, " * * * they just appeared suddenly in front of me. I had no chance to cut either way. It doesn't matter about the space; I didn't have time." The Worrix car left 123 feet of skid marks on the dry surface of the highway—the marks extended 55 feet from their origin to the point of impact and an additional 68 feet to the point where the car came to rest. The point of impact was established as having been substantially in front of the Adams store. The skid marks reflected that the course of the Worrix vehicle was virtually straight, with a slight bearing to its right. There was no pedestrian crosswalk at the accident site.

The brunt of the argument advanced for the appellees is that Worrix could and should have seen the mother and child at the edge of the highway as they crossed from the west side to about the center of the east lane where they were struck. It is contended for appellees that appellant could have swerved to the left lane which was clear and that an opportunity also existed for Worrix to cut to his right on the shoulder to avoid the accident. The highway was straight and level for a distance of more than 600 feet as Worrix approached the scene of the accident.

■ The testimony in this case impels the conclusion that the accident was a suddenly occurring event. The anguished scream of Mrs. Rowe as she futilely called out to the unfortunate little boy admits of no inference except emergency. As stated in Young v. DeBord, Ky., 351 S.W.2d 502:

"Where a motorist, as in this case, was faced with an emergency that made it impossible for him to know what to do, he should not be held responsible for his failure to follow what is afterwards considered the correct course of action." Id. 351 S.W.2d 504.

Even from the vantage point of calm hindsight, it is difficult to accept the contentions of appellees as to what preventive course could have been followed by appellant. For him to have veered to his left would have endangered the pedestrians who were occupying that left lane during the brief moment which he may have had for determining what to do. The opportunity for avoiding the accident by cutting to the right was a questionable one, in view of the physical conditions prevailing as shown in the record. Whether such a course could have been negotiated successfully or safely is extremely doubtful from the evidence at bar. It hardly may be said that Worrix had a reasonable opportunity to evaluate and choose either course. No one contends that he could have stopped in time to prevent the accident.

The appellees rely on Riley v. Hornbuckle, Ky., 366 S.W.2d 304, but the facts of that case are readily distinguishable from those present here. As noted in Riley v. Hornbuckle, supra:

"If it [last clear chance doctrine] is to have any real effect as a humanitarian policy, we think the doctrine must be held applicable to the situation in which (as in the Saddler case) there is evidence that a pedestrian who was within the intended path of travel of an oncoming vehicle remained in that area of peril, with nothing to prevent the driver's seeing him, long enough for the vehicle to move a distance of several hundred feet." Id. 366 S.W.2d 307.

█ Certainly, the most favorable inference for the appellees fails to indicate that either of the pedestrians was in the intended path of appellant for any appreciable period—certainly not for several hundred feet. Appellees refer to Hopper v. Reed, (6 C.C.A.) 320 F.2d 433, but we are unable to fathom any basis for upholding appellees' claim on the strength of that decision. In Hopper the accident occurred in broad daylight. The defendant there was approximately one-hundred or more feet from the point of the accident when the five-year-old plaintiff started to cross the road, and the court concluded that a jury question was presented as to whether the defendant could have avoided the accident. In that decision, however, the federal court affirmed the judgment absolving the defendant, because the jury had found that the defendant was free of negligence and did not reach the issue of last clear chance as submitted in a subsequent interrogatory. It is somewhat significant that in Hopper v. Reed, supra, the court relied on Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758, for the proposition that last clear chance comes into play, not only when the plaintiff's peril is actually discovered, but also, if, in the exercise of reasonable care, it could have been discovered by the defendant in time to have enabled him to avoid the accident through the exercise of ordinary care. It would appear that the federal court overlooked the decision in Saddler v. Parham, Ky., 249 S.W.2d 945, in which this court specifically criticized Swift & Co. v. Thompson's Adm'r, supra, and approved the doctrine that " * * * it is only where the plaintiff is *physically unable* to escape from his peril that the defendant is held responsible on the ground that he *should have* discovered the peril." Id. 249 S.W.2d 945. Although in Riley v. Hornbuckle, Ky., 366 S.W.2d 304, the result reached in Saddler v. Parham, Ky., 249 S.W.2d 945, was criticized, the legal principles enunciated in Saddler were reaffirmed. Hence, there was no basis for last clear chance here on the theory that appellant could or should have seen the pedestrians near the road.

█ As respects the claim of the administrator of the little boy, the pure doctrine of last clear chance is not applicable anyway. The three-year-old was incapable of contributory negligence, a condition precedent for the invocation of the doctrine of last clear chance. The real issue is whether the appellant was guilty of negligence which proximately contributed to bring about the accident. There was nothing proven which imposed on appellant the duty of guarding against injuring small children as discussed in Liberty National Bank & Trust Co. v. Raines, Ky., 416 S.W.2d 719. It seems clear that the "precipitant act" of the child in dashing into the path of the car was the sole cause of the accident. No negligent act of omission or commission by appellant appears in the proof. In our view, the evidence presented fails to raise a jury issue as to appellant's actionable negligence, and the trial court should have sustained the appellant's timely motion for directed verdict. It follows that it was error to overrule the appropriate motion for judgment n. o. v.

The judgment is reversed with directions to enter a new judgment dismissing the

complaint as to the claims of Clinton Rowe, administrator of the estate of Clinton Gregory Rowe, deceased; Clinton Rowe, individually; and Glenda Kay Rowe.

All concur.