**Georgene CONLEY, next friend of Gregory Brett Conley, a minor, Appellant,**

v.

**Zelma B. RICE, Appellee.**

Court of Appeals of Kentucky.

Sept. 19, 1969.

Charles S. Sinnette and Eldon L. Webb, Ashland, for appellant.

J. W. McKenzie and Earle Moffitt, Ashland, for appellee.

STEINFELD, Judge.

Gregory Brett Conley, five years of age, was struck at Winchester and Third Street in Ashland, Kentucky, on May 26, 1965, by an automobile driven by Zelma B. Rice. The suit, filed to recover for Gregory's injuries, resulted in a jury verdict in favor of Mrs. Rice. From a judgment entered pursuant to that verdict, this appeal was taken. We affirm.

Winchester Avenue, a concrete street with curbs and gutters, runs generally east and west, and Third Street extends northwardly from the north curb line of Winchester. Third Street has a gravel surface with curbs extending only 8 feet from Winchester. Just eastwardly of the east

curb line of Third Street, if extended, Winchester becomes a divided street with two 16 foot concrete driving lanes, one for eastbound and one for westbound traffic. The two strips are separated by an island above which is an overhead bridge supporting the roadway of U. S. Highway 23. On this island are piers, poles and stairways, and on the date of the accident there was substantial growth in dense foliage between 2½ and 3 feet high. A curb surrounded the island section. The bridge begins to cross the southern portion of Winchester at a point opposite the termination of Third Street and veers eastwardly above the island. South of the south curb line of Winchester the bridge is supported by an abutment. Between it and the curb is a concrete walkway frequently used by those boarding and alighting from a city bus which stops at that point.

There were no traffic controls at this intersection and no marked crosswalks. Testimony showed that pedestrians, both adults and children, when crossing Winchester did so between the northeast corner of Third Street and Winchester and the bus stop, passing near the western curb of the island where the division of the two lanes of Winchester began. Witnesses termed it "an unmarked crosswalk."

On the morning of the accident Gregory followed his schoolbound older brother Stephen to the bus stop. Stephen returned Gregory to the northeast corner of the intersection and instructed him to return home, then Stephen boarded the eastbound bus. Gregory was next seen standing in the eastbound lane of Winchester about two feet from the driver's seat on the left side of the bus. "He was shooting the bus driver with his toy gun." As the bus started he took " * * * a couple of steps backwards, turned around, started with a dead rush (or run) right across the street. He was running as fast as a child of his size could." A witness said he was crouched over "like an Indian." He continued in the street past the end of the island and

across part of the west lane of Winchester when he was struck.

Although the speed limit was 35 miles per hour, Mrs. Rice was driving her automobile at 20 to 25 miles per hour in the center or slightly to the left of center of the westbound lane of Winchester approaching the intersection of Third Street. She testified that suddenly Gregory appeared in the area about 10 feet in front of the left front fender of her car " * * running at full speed." He was hit by the right front part of the automobile. It was stopped within 5 to 10 feet of the point of impact and about 5 to 10 feet into the intersection. Mrs. Rice said that she did not reduce her speed as she approached the intersection and she did not sound her horn; also that because of the various structures and the weeds on the island she could not have seen, and did not see, Gregory until he emerged into the street in front of her. Others corroborated, and none disputed her statements as to her speed, the approximate point of impact and that the boy emerged suddenly from an obscured place. She admitted knowledge of the bus stop under the bridge and assumed "(T)hat people going to and from the bus would use the pathway along the east intersection of Third Street and Winchester Avenue in a straight line." There were no pedestrians in the street and no other children playing in the area.

After all evidence was presented counsel for Gregory moved for a directed verdict claiming " * * * that the evidence established * * * that the defendant violated * * * KRS 189.570 * * *" and struck the child in an unmarked crosswalk. The motion was overruled. This point was again asserted and rejected on a motion for judgment notwithstanding the verdict. A motion for a directed verdict in favor of Mrs. Rice also was made and overruled.

The Conleys note that a five-year-old child is incapable of negligence (Willoughby v. Stilz, Ky., 387 S.W.2d 10 (1965)) and charge that "KRS 189.570(2) places a man-

datory duty upon the operator- of a motor vehicle to yield the right-of-way to a pedestrian crossing the roadway within any unmarked crosswalk at an intersection." The pertinent part of the statute provides "* * * the operator of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within * * * any unmarked crosswalk at an intersection. If necessary in order to yield the right-of-way, the operator shall slow down or stop." Cited are Ellis v. Glenn, Ky., 269 S.W.2d 234 (1954); Clark v. Smitson, Ky., 346 S.W.2d 780 (1961); Severance v. Sohan, Ky., 347 S.W.2d 498 (1961); Barker v. Sanders, Ky., 347 S.W.2d 529 ,1961) and McKinney v. Ballard, Ky., 352 S.W.2d 200 (1961).

■ Appellee responds "* * * that before the duty to yield to a pedestrian in an unmarked crosswalk (and to stop if necessary) is imposed, it must be shown that the motorist saw or by the exercise of ordinary care should have seen the pedestrian in, entering or about to enter the unmarked crosswalk." She notes that in Whittaker v. Thornberry, 306 Ky. 830, 209 S.W.2d 498 (1948), we ruled that neither pedestrian nor motorist has the absolute right-of-way over the other. Cf. 60A C.J.S. Motor Vehicles § 388(1), p. 736. Whittaker said a "pedestrian has no right even under the favorable statute (KRS 189.570(2)), as said in the Pryor case to 'proceed serenely oblivious of surrounding circumstances'. His superior right of passage is not absolute but relative only." Pryor's Adm'r v. Otter, 268 Ky. 602, 105 S.W.2d 564 (1937), held that a motorist must exercise reasonable care "* * * not to injure pedestrians if he is aware of their presence, although he may assume they will themselves act with reasonable prudence and not unexpectedly or suddenly place themselves in his path." In Eager v. Willis, 17 Utah 2d 314, 410 P.2d 1003 (1966), it was written:

"Statutes or ordinances giving pedestrians the right of way at street crossings create a preferential but not an absolute right in their favor. Before the duty of a driver to yield the right of way arises he must be in a situation where he is either aware of the presence of a pedestrian within the crosswalk or, in the exercise of reasonable care should have become aware of the pedestrian's presence in time to yield the right of way."

Also see Charvoz v. Cottrell, 12 Utah 2d 25, 361 P.2d 516 (1961) and Rettig v. Coca-Cola Bottling Co., 22 Wash.2d 572, 156 P.2d 914 (1945). It was said in Grubb Motor Lines v. Woodson (CCA 4) 175 F.2d 278 (1949): "Such right of way statutes as these must be given a sensible construction and are properly applied in cases where it is reasonably apparent that either the pedestrian or the vehicle must yield in order to avoid a collision." There was conflicting evidence as to whether Gregory was in an unmarked crosswalk, but in considering the motion of Mrs. Rice for a directed verdict, we will assume that he was. We hold that there was no duty to yield to the child until Mrs. Rice discovered, or by the exercise of ordinary care should have discovered, that Gregory was in or was about to enter the unmarked crosswalk. 60A C.J.S. Motor Vehicles § 388(1), p. 737.

Nothing was proved that imposed on Mrs. Rice the duty of taking extra precautions to guard against injuring small children, a subject we discussed in Liberty National Bank and Trust Co. v. Raines, Ky., 416 S.W.2d 719 (1967). Cf. Worrix v. Rowe, Ky., 428 S.W.2d 187 (1968). The proof was clear that "* * * (t)he driver could not have anticipated that this boy would suddenly dart from behind * *" the point of the island into her path. Louisville Taxicab & Transfer Co. v. Warren, 305 Ky. 861, 205 S.W.2d 695 (1947).

We said in Thomas v. Gates, Ky., 399 S.W.2d 689 (1966), that "If the child suddenly appears *from a concealed position* so near to the path of the vehicle that an ordinary motorist, observing his duties as to speed, lookout and control, could not have avoided striking the child, the motor-

ist is not liable. However, the motorist is not exonerated if the place of concealment was such a distance from the path of the motorist that the child while traveling that distance, should have been seen and avoided." Also see Scott v. Lafferty, Ky., 425 S.W.2d 734 (1968) and 60A C.J.S. Motor Vehicles § 396(2), p. 780.

We find no evidence that Mrs. Rice was not observing all duties imposed on her and the proof is virtually undisputed that she did not discover and could not have discovered the child in time to have avoided hitting him. Even in view of the known existence of the unmarked crosswalk there is no suggestion that Mrs. Rice was driving at an excessive speed. There having been no showing of negligence on the part of Mrs. Rice the motion made on her behalf for a directed verdict should have been sustained. Brothers v. Cash, Ky., 332 S.W.2d 653 (1959).

The appellant argues that there were errors made with respect to the instructions. Our decision that a motion for a directed verdict should have been entered in favor of Mrs. Rice makes it unnecessary that we consider other claims.

The judgment is affirmed.

All concur.