**Charles E. KELLER, Guardian of Adrian Joseph Smith, an Infant Under Six Years of Age, Appellant,**

v.

**Charles D. ELDRIDGE, Appellee.**

Court of Appeals of Kentucky.

Oct. 1, 1971.

Gary L. Gardner, Louisville, for appellant.

Charles E. Duncan, Louisville, for appellee.

EDWARD P. HILL, Jr., Judge.

This appeal is from a judgment entered pursuant to the verdict of a jury finding for the appellee (defendant in the trial court) in appellant's action for damages for injuries received by Adrian Joseph Smith, 5 years of age, in a collision with appellee's automobile.

Appellant presents the four following arguments. First, he says the trial court erred in refusing to give the jury directed instructions to find for plaintiff. Secondly, he contends the evidence showed appellee did not keep a proper lookout, entitling appellant to an instruction placing appellee under the duty to exercise "extraordinary precautions."

Next appellant claims error in refusing to instruct the jury that "children seven (7) years of age and under are civilly irresponsible for their acts and are incapable of contributory negligence."

Finally appellant says "the trial court erred in allowing appellee's wife, a non-party to the proceedings, to join him at counsel's table for closing arguments and allowing appellee's counsel to improperly refer to both appellee and his wife as parties defendant in a deliberate and studied attempt to arouse the sympathy and passion of the jury."

Aside from the question of whether appellee could or should have observed the children including the appellant before the collision, there is little conflict in the facts.

Appellee was traveling in a Volkswagen south on Preston Street, a one-way street with provisions for four lanes of traffic moving south. He was in the right lane next to the west curb. He stopped for a traffic light at Oak Street, 240 feet north of the place of the accident. As he passed a group of small children standing on the sidewalk, a larger boy pushed the appellant off the sidewalk into the path of appellee's car. The child struck the right side of appellee's car near the front end of the right-front fender. Appellee was

traveling at a rate of speed of about 25 m. p. h.

The witness Price, traveling in the first lane left of appellee's lane, testified he made the same stop at Oak Street at which appellee stopped; that he observed the children when he was about 200 feet north of them and reduced his speed to 10 to 15 m. p. h. when appellee passed the Price car and obstructed his view at the time of the accident.

The witness Melvin Diehlmann, who observed the accident from his front porch nearby, testified five or six small children dressed in fairly bright clothing had been playing about the sidewalk for ten or fifteen minutes; that there were no major obstructions to the view of the approaching vehicle of the appellee.

Appellee testified he was keeping his straight-ahead lookout; that he could see the sidewalk on the west side of Preston Street by the process of peripheral vision, but that shadows, utility poles and signs obstructed his view. It was argued that if Price could see the children, appellee should have seen them. But appellee argued that from his angle, his view was more obscured than was Price's view. Appellee's car left 39 feet of skid marks after the accident.

∎ It is undisputed that when appellee was between 40 to 60 feet from the group of children, one of them shoved the child into the street in front of appellee's vehicle. We think there was sufficient conflict in the evidence on the question of whether appellee kept the proper lookout under the whole circumstance to create a jury issue. The jury having resolved that issue in favor of the appellee, we cannot say that plaintiff's evidence was so strong as to require a verdict for him. Appellant's contention that he was entitled to a directed verdict must fail.

∎ Appellant next maintains that he was entitled to have his offered instruction on lookout duty and "extraordinary precautions" presented to the jury. It is concluded that Instruction 1-e given by the court fully covered appellant's theory. In fact, it was more favorable to the appellant than was the one offered by appellant. It instructed the jury that if "Eldridge, saw or by the exercise of ordinary care could have seen" the children on the sidewalk he "should have anticipated that Smith * * * would get in" his path "and to operate said car so as to avoid striking Smith."

Appellant's third point is that the trial court should have instructed the jury that appellant was not chargeable with contributory negligence due to the fact that he was under 7 years of age.

∎ The purpose of jury instructions is to define the law on issues that are raised. If no issue is presented, it is not usually necessary to give an instruction on the subject. Here the appellee did not contend at the trial that the unfortunate little boy was contributorily negligent, but that his predicament was caused by another child, one older than the appellant, in shoving the appellant into the street. We conclude therefore that no instruction as to appellant's not being charged with contributory negligence was required. Hopper v. Reed, 6 Cir., 320 F.2d 433.

∎ The fourth and last argument by appellant is that he was prejudiced by the conduct of appellee's wife sitting by her husband's side during the closing argument, to which he made seasonable objection. It is not shown or contended that anything pertaining to the appearance or conduct of the wife would of itself arouse sympathy for her husband. Apparently appellant would have this court decide that the wife, not a party to the litigation, may not sit, or for that matter stand, side-by-side with her husband before the bar of justice. There are those who would argue that indeed it is her place. In fact, in many marriage vows the wife is required to affirmatively promise to "stand by" her husband in "sickness and in

health." That would seem to authorize her to "stand by" or sit by her man at any and all times he may consent thereto. Furthermore the book of all books, the Bible, tells us that a man "shall cleave unto his wife; and they shall be of one flesh." Be it remembered also that when the wife stands by the side of her husband, she is back where she originated. It is written that the Creator first made man and finding him lacking, took from his side a rib and therefrom fashioned a woman. Keeping in mind this historic place of the wife, we shudder at the thought of disturbing it.

The judgment is affirmed.

All concur.