**Jewel E. COMPTON, Appellant,**

**v.**

**Revon JOHNSON and Donna McCoy Johnson, Appellees.**

Court of Appeals of Kentucky.

April 25, 1975.

Joseph H. Miller, John R. Cook, Jr., Charles L. Calk, Gess, Mattingly, Saunier & Atchison, Lexington, for appellant.

Oscar H. Geralds, Jr., Moloney & Moloney, Lexington, for appellees.

PALMORE, Justice.

Jewel Compton appeals from a judgment entered on a jury verdict for the defendant in her action against Donna M. Johnson for personal injuries resulting from a collision at the intersection of Euclid and Ashland Avenues in Lexington between an automobile driven by Mrs. Johnson and an automobile in which Mrs. Compton was a passenger.

The two questions before us are whether Mrs. Compton was entitled to a directed verdict of liability against Mrs. Johnson and whether the instruction given by the trial court with respect to Mrs. Johnson's duties in making a turn at the intersection was prejudicially erroneous. It is our opinion that there was no error.

Euclid is a 4-lane street running east and west, with two lanes for traffic moving in each direction. Ashland is a 2-lane, 2-way street running north and south. They intersect at right angles. The intersection is controlled by a traffic light. At the time of the accident the light was green for all Euclid Avenue traffic.

The Compton automobile, driven by Mrs. Compton's husband, Robert, was going east on Euclid in the south or curb lane. Mrs. Johnson, going west on Euclid, made a left turn southward onto Ashland and was struck by the Compton vehicle in the south lane of Euclid at about the center of Ashland. Neither driver saw the other car until moments before the collision. There was no evidence of excessive speed on the part of either.

Compton had entered Euclid from the north, turning left from Lafayette. According to his evidence, he moved to the curb lane on the right as soon as traffic permitted and well before reaching the intersection of Ashland. All of the evidence is that as both the Compton and Johnson cars approached the intersection from opposite directions an eastbound vehicle on Euclid was stopped at the intersection waiting to make a left turn northward onto Ashland, and two, three or more vehicles were stopped behind it. These automobiles were in the north or inner lane of Euclid for eastbound traffic. It is likewise undisputed that Mrs. Johnson made her turn from the south or inner lane of Euclid for westbound traffic. The only real conflict in the evidence is that the Comptons say their car was in the south or curb lane all the time as it approached Ashland, whereas two eye-witnesses standing at the southeast corner waiting to cross Euclid said that the Compton car approached on the inner lane to the rear of the stopped vehicles and then swerved to the curb lane at a point three or four car-lengths short of the intersection. One of these witnesses testified that Compton changed lanes "approximately the same time she [Mrs. Johnson] came into the intersection." Mrs. Johnson

herself testified that she had a clear view to the west "for several blocks at least" up the south lane of Euclid and that "there was no one in that lane when I began my turn."

■ This evidence to the effect that Compton moved into the curb lane at or about the time Mrs. Johnson turned distinguishes the case from those relied upon by Mrs. Compton for a directed verdict in her favor. Unquestionably the driver pursuing a straight course at an intersection has the right-of-way over another driver seeking to turn into or across his projected path. Rankin v. Green, Ky., 346 S.W.2d 477 (1961); Weaver v. Brooks, Ky., 350 S.W. 2d 639 (1961); Barnes v. Jones, Ky., 351 S.W.2d 506 (1961). Nor is there any doubt that KRS 189.380(1) enjoins a driver against changing course "unless and until such movement can be made with reasonable safety," etc. Nowhere, however, has it been suggested in any of our cases that this duty is absolute, in the sense that the collision itself proves conclusively that the turn could not have been made with reasonable safety. To the contrary, for example, in Louisville Transit Company v. Gipe, Ky., 277 S.W.2d 52, 54 (1955), in which the turning driver was held negligent as a matter of law, the court distinguished those cases in which the vehicle on a straight course had approached at a high rate of speed.

The collision in State Farm Mut. Ins. Co. v. Marcum, Ky., 420 S.W.2d 113 (1967), occurred at the intersection of U.S. Highway 231 and Ky. Highway 136, when Bell, going north on U.S. 231, made a left turn into the path of Marcum, who was driving south on the same highway. No other traffic figured in the accident, and Bell should have been able to see the oncoming Marcum vehicle for a distance of some 350 to 400 feet. This court concurred in the trial court's judgment that Bell was negligent as a matter of law. In Kentucky Bus Lines, Inc., v. Wilson, Ky., 258 S.W.2d 486 (1953), the driver of a truck towing another truck along a straight

stretch of highway pulled into the left lane in order to negotiate a right turn into a side road. A collision occurred when the driver of a bus approaching from the rear attempted to pass on the right. The truck driver was held negligent as a matter of law. In Louisville Transit Company v. Gipe, Ky., 277 S.W.2d 52 (1955), the driver of an automobile on a 6-lane street in Louisville turned left into the path of an oncoming bus, mistakenly assuming it would stop at the corner in order to discharge or take on passengers. He admitted having seen the bus approaching at a distance of 80 feet beyond the intersection. He was held negligent as a matter of law. The collision in Smith v. Sizemore, Ky., 300 S.W.2d 225 (1957), took place when one driver, having full view of an approaching truck but, as in the *Louisville Transit* case, mistakenly assuming it was going to stop, made a left turn in front of it. He too was held negligent as a matter of law. In Hollar v. Harrison, Ky., 323 S.W.2d 219 (1959), a driver with a clear view 75 to 100 yards ahead turned left into the path of a truck approaching within a distance of 40 feet. Again, the turning driver was held negligent as a matter of law.

█ In each of these cases there was nothing to prevent the turning driver from observing the imminent approach of the vehicle that was traveling in a straight course and thus had the right-of-way. In this instance, however, there was room for a difference of opinion as to whether, if it is accepted as true that Compton switched into the curb lane at about the same time as Mrs. Johnson began her turn, she breached her duty to see that the turn could be made with reasonable safety.

The argument about the instruction brings into focus the question of just what is this duty to see that the turn "can be made with reasonable safety." It was given to the jury as follows: "and not to make the turn if it reasonably appeared that that movement or operation might affect the movement of the [Compton] automobile." The instruction tendered by Compton, but not given, would have been to the effect that it was Mrs. Johnson's duty "to see that there was sufficient time and space to make a left turn into South Ashland Avenue in reasonable safety and not to make the turn if that movement might affect the movement or operation of Robert Compton's automobile." So it may be seen that the basic difference is whether the duty should be expressed in the absolute or in terms of ordinary care.

█ Fundamentally, the turning driver's duty is neither more nor less than a duty to yield the right-of-way. In other situations, right-of-way and duty to yield generally have been held not to be absolute, but to apply in terms of reasonable care. See, for example, discussion in Conley v. Rice, Ky., 444 S.W.2d 898, 900 (1969), in the context of pedestrian cases. A comparable example is presented by KRS 189.080, which in absolute terms requires a motorist to sound his horn as a warning to pedestrians and other drivers "whenever necessary." Yet we have held that "whenever necessary" does not mean what may afterward appear to have been necessary in fact, but what reasonably appeared to be necessary at the time. Barrett v. Stephany, Ky., 510 S.W.2d 524, 527 (1974). And so it is our opinion that in such cases as this, the criterion to which the motorist must be held in judging whether a change of course can be executed "with reasonable safety" is the standard of ordinary care.

█ In future trials we suggest that the "unless and until" clause of KRS 189.-380(1) be phrased in the instructions as "unless and until it appeared to him in the exercise of ordinary care that such movement could be made with reasonable safety." As it is, we think the phraseology "reasonably appeared" as used in this case was sufficient to convey the same thought and that the instructions were not erroneous in that respect.

The judgment is affirmed.

All concur.