[Civ. No. 16263. First Dist., Div. One. Mar. 22, 1955.]

ARCHIE L. JOHNSTON, Respondent, v. SALVATORE C. ORLANDO et al., Appellants.

Rankin, Oneal, Luckhardt, Center & Hall, Maurice J. Rankin, Marshall S. Hall and Byron J. Snow for Appellants.

Morgan & Beauzay for Respondent.

BRAY, J.—Defendants appeal from a judgment on a jury verdict of $5,000 in favor of plaintiff in a personal injury action.

### QUESTIONS PRESENTED

1. Whether the evidence brings the case within the general rule that one who voluntarily assumes a duty by affirmative conduct must exercise due care in performing that duty (Prosser on Torts, 194-197). 2. Should an instruction on unavoidable accident have been given?

### EVIDENCE

Defendant Salvatore C. Orlando owned property through which El Camino Real ran. A cement irrigation pipe, 12 inches in diameter and 150-160 feet long extended under the highway from one part of Salvatore's property to the other.

Salvatore contracted with A. J. Peters and Sons for the latter to clear the pipe of debris which had collected therein. Plaintiff was employed by Peters as a laborer. Byrne was Peters' foreman in charge of the work. After unsuccessfully trying a different method for cleaning the pipe, Byrne devised the following one: A well driller's "bucket" (a piece of pipe closed at one end) was pulled into the pipe until it met resistance. It was then backed out and emptied. At first a single winch truck was used for power. In order to pull from both sides it was necessary to disattach the cable from the truck on the one side, drive across the highway, and attach a pull on the other side. On the second day, Salvatore became dissatisfied with the time consumed in the operation and its cost. He suggested that he and his son, defendant Peter Orlando, could take care of the work on one side of the highway utilizing their tractor and eliminating the need for Byrne's presence in a supervisory capacity. Byrne agreed to this suggestion, it being understood that neither Salvatore nor Peter were being hired. Thereafter on one side of the highway the cable was pulled by a winch operated by the contractor's employee Price, and on the other side of the highway by a tractor operated by defendant Peter. After Salvatore and his son volunteered aid, Byrne took off one of the men on the crew. Byrne knew that the job was dangerous in the sense that all construction jobs are dangerous.

Plaintiff's job was to remove the debris from the bucket after each run on the pipe. He was stationed in a manhole or stand-pipe, wearing gloves to protect his hands. The morning of the accident (third day) Byrne took plaintiff and Price out on his pickup truck. He stayed long enough to set up the job, watch several runs on the irrigation pipe and see plaintiff empty the bucket several times. From this point on the testimony becomes sharply contradictory. Byrne testified he stopped giving signals and then started to leave for another job. Salvatore, standing at the manhole, took over the giving of signals five to ten minutes later. As Byrne was heading for his truck he heard plaintiff yelling. Byrne ran back to the manhole and found plaintiff in it with his hand wedged between the cable and the side of the manhole. Salvatore was there shouting angrily at his son Peter on the tractor. Byrne testified he was not giving the signals to the tractor and was not near the manhole at the time of the accident. Plaintiff testified that when he went into the man-

hole Salvatore was standing near it in a position to give signals and that Salvatore was to signal Peter. While in the manhole he could not see Salvatore. The bucket came to the manhole and stopped. He picked it up to empty it. Suddenly the tractor started, causing the cable to pull taut and it crushed plaintiff's hand between it and the side of the manhole. (It is conceded that plaintiff's hand was badly injured.) About a month later, he and one Santana talked to Salvatore and Peter about the accident. Salvatore admitted giving signals to Peter. Peter stated that his father gave the signals but because of trees they were difficult to see. Santana testified to the same effect. Salvatore and Peter did not deny making these statements. They merely could not remember making them.

Defendant Peter, aged 20, testified that he operated the tractor on signal from Byrne, that he could not see plaintiff in the manhole. It was Byrne, not Salvatore, who told him to operate the tractor, although he was not hired by or did not expect compensation from him or his company. At the time of the accident Salvatore was merely a spectator, standing 15 feet away from the manhole. It was Byrne who gave the signal that caused him to start the tractor, resulting in plaintiff's injury. Peter contradicted Byrne and claimed that the tractor was used from the very beginning of the bucket operation, rather than the winch being moved back and forth across the highway. Peter and Salvatore both denied that Salvatore had used angry words towards Peter immediately following the accident.

Salvatore testified that Byrne asked him if he had a tractor which could be used. He said he had. Byrne asked Peter to drive without asking Salvatore's permission. Salvatore did not discuss saving money with Byrne. Byrne gave the fatal signal. Salvatore was 15 feet away from the manhole. Salvatore did not give signals at any time nor participate in the job in any way.

1. *Liability.*

Defendants contend that they owed no duty to plaintiff because the plan of removing the debris was not defendants' and that plaintiff entered the stand-pipe and undertook to guide the bucket at Byrne's instance, and not at defendants.' This contention overlooks the theory upon which plaintiff is entitled to recover. The testimony of plaintiff and Byrne to the effect that Salvatore undertook the sole control of the tractor, supported, too, by the testimony of plaintiff

and Santana as to the admissions of the defendants, was sufficient if believed by the jury (and it obviously was) to support the implied finding that defendants undertook the duty of operating the tractor and giving the necessary signals therefor, and failed to perform the duty with due care. The jury having found, in effect, that it was not Byrne's duty to give signals at this time and that he did not, the accident, under the evidence, could have occurred in only one of two ways, either of which would make defendants liable therefor. Either Salvatore gave the signal without observing plaintiff's precarious position (no one testified to seeing Salvatore give a signal), or he gave no signal and Peter started the tractor without it. In the latter event, as Peter was employed by and working for Salvatore at the time, Salvatore would be liable for Peter's negligence under the doctrine of respondeat superior.

Citing *Been* v. *Lummus Co.*, 76 Cal.App.2d 288 [173 P.2d 34], to the effect that liability for handling dangerous instrumentalities arises from failure to use due care, and that such failure arises only when the circumstances show that the actor had reason to know that his act was likely to produce injury to the other party, defendants claim that the risk of harm here was the basic method devised by Byrne to clean the pipe and that therefore the negligence was that of Byrne, not defendants. Assuming the method to have been dangerous, nevertheless at least one proximate cause of the injury was defendants' failure to use due care in the operation of the tractor. ■ He who undertakes to do an act must do it with reasonable care. (See 38 Am.Jur. 659, Negligence, §17; Rest., Torts, §§ 283, 289.) ■ At best, Byrne would have been a joint tort feasor with defendants, and, of course, the negligence of a joint tort feasor is not a defense. (See 19 Cal.Jur. 664.) The motivating force behind the cable was in the sole control of defendants. The suggestion that defendants did not know that pulling the cable without regard to what plaintiff was doing with the bucket at the moment would be dangerous, merits no discussion. If Salvatore signalled without looking at plaintiff, or if Peter started the tractor without a signal, they did "an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another . . ." (Rest., Torts, § 284.) Salvatore would be liable for defendant Peter's negligence. ■ "Apart from any basis of the family relation itself, one member of the

family may of course be held responsible for the torts of another to the same extent as for those of any other person. Thus a father may be liable for the tortious act of his son if he has directed or encouraged it, or has ratified it by accepting its benefits. Also, of course, the son may act as the agent or servant of the father, and to the extent that the tort is committed within the scope of the agency the parent may be liable." (Prosser on Torts, p. 913.) ██ "One who entrusts work to an independent contractor, *but who retains the control of any part of the work,* is subject to liability for bodily harm to others, for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." (Rest., Torts, § 414; emphasis added.)

Defendants contend that plaintiff assumed the risk of injury. ██ Apparently this contention is based upon the fact that plaintiff testified he knew that the tractor driver could not see him while in the manhole and that he did not actually know whether Salvatore, who he testified was supposed to signal and who was standing by the manhole when he went in it, was actually standing there after he got in. He did not look to see. This certainly does not constitute assumption of risk as a matter of law. Whether, under the circumstances of this case plaintiff was justified in relying on defendants' duty under the circumstances to exercise due care was a question of fact for the jury. The cases cited by defendants on this point are readily distinguishable. In *King* v. *Griffith Co.,* 65 Cal.App.2d 114 [150 P.2d 8], an employee of a subcontractor was injured while attempting to step over a sewer ditch. The court held that the danger of attempting to cross the ditch was *obvious.* In *Miller* v. *Pacific Constructors, Inc.,* 68 Cal.App.2d 529 [157 P.2d 57], the court referred to the rule that a contractor is not ordinarily liable for injuries to workmen resulting from defects which are clearly visible or obvious or are constructively or actually known to the workmen but held it not applicable to the facts of that case, as the accident was not due in any way to the shortness of the ladder which shortness was obvious to the plaintiff.

There is a considerable difference between the obvious dangers of those cases and the situation here. Had defendants performed their duty (plaintiff had the right to assume they would), plaintiff's position in the manhole was not necessarily a dangerous one. It would be a curious rule of

law which would hold that a person relying on the use of due care by persons owing that duty to him, in the absence of anything indicating they would not use it, was assuming the risk of their nonperformance and therefore could not recover for their negligence.

2. *Instruction on Unavoidable Accident.*

"The recent decision of the Supreme Court in *Parker* v. *Womack,* 37 Cal.2d 116 [230 P.2d 823], indicates that the giving of such an instruction might not have been improper. That decision has been interpreted as meaning that 'the giving of an instruction on unavoidable accident is proper unless the defendant is negligent as a matter of law.' (*Driver* v. *Norman,* 106 Cal.App.2d 725, 727 [236 P.2d 6].)" (*Taylor* v. *Luxor Cab Co.,* 112 Cal.App.2d 46, 56 [246 P.2d 45].) However, as said in the Taylor case, "it does not follow that the failure to give such an instruction in our case was reversible error." (P. 56.) As there, the element of inevitability or unavoidability claimed here, turns upon defendants' claim that plaintiff failed to prove that defendants were negligent. The trial court fully instructed the jury that plaintiff could recover only if plaintiff proved defendant to be negligent and that such negligence proximately caused the accident.* A further instruction to the effect that a failure to prove defendants' negligence constituted inevitable accident could not possibly have changed the verdict. As said in *Gunter* v. *Claggett,* 65 Cal.App.2d 636, 642 [151 P.2d 271], ". . . unavoidable accident is simply another way of urging that defendant was not negligent. The jury has found, and the finding is supported, that defendant was negligent. No prejudicial error occurred in failing to instruct on this issue." (To the same effect, *Guay* v. *American President Lines, Ltd.,* 81 Cal.App.2d 495, 514 [184 P.2d 539].) Defendants' evidence was to the effect that it was Byrne's duty to signal Peter and that Byrne actually gave the signal that caused Peter to start the tractor, thereby causing the accident.† Plaintiff's evidence was that it was Salvatore's duty to signal and that either Salvatore failed to signal, or if he did that Peter either disregarded the signal

---

*Moreover, the jury were instructed that if it found that Peter was acting under the direction of Byrne, plaintiff could not recover.

†Defendants do not concede that the accident was caused by the tractor pulling the cable. They contend that the evidence does not show how the accident occurred. However, plaintiff's own testimony fully justifies the conclusion that it was so caused.

or started the tractor without signal. "Inasmuch as 'the terms inevitable or unavoidable accident signify an injury which is caused by something other than the actionable negligence of the parties involved,' and the ' ". . . defense of inevitable accident is nothing more than a denial by defendant of negligence or a contention that his negligence, if any, was not the proximate cause of the injury" ' (*Parker* v. *Womack, supra,* 37 Cal.2d 116, 120 and 121), and the jury was fully advised on those subjects, we find no reversible error in the trial court's failure to give the proffered instructions on inevitable or unavoidable accident." (*Taylor* v. *Luxor Cab Co., supra,* 112 Cal.App.2d at p. 57.)

In *Lloyd* v. *Southern Pac. Co.,* 111 Cal.App.2d 626 [245 P.2d 583], the court lists cases in which it was held that the failure to give the unavoidable accident instruction was not error, and referred to *Jaeger* v. *Chapman,* 95 Cal.App.2d 520 [213 P.2d 404], as holding that while it would not have been improper to give such an instruction in that case, it " '. . . was not error to refuse to give it where all elements of defendant's liability were covered by other instructions.' " (They were in our case.) The court then discusses the *Parker* v. *Womack* case, *supra,* pointing out that there the trial judge gave such an instruction, but on motion for new trial was convinced he had erred. The Supreme Court held that it was not prejudicial error under the circumstances to give it. Then says the court in the Lloyd case, *supra,* page 637, "But the holding that it was not prejudicial error in that case to *give* the instruction, does not mean that it was prejudicial error in this case to *refuse* it." So, in our case it was not prejudicial error to refuse it.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.