Shirleen JORDON, Suing by Her Father and Next Friend, Shirley Jordon, Appellant,

v.

Carr CLOUGH, Appellee.

Court of Appeals of Kentucky.

Feb. 21, 1958.

Rehearing Denied June 20, 1958.

Earl F. Ashcraft, Ezart F. Ashcraft, Irvine, for appellant.

J. W. Knippenberg, Lexington, A. J. Deindoerfer, John C. Fogle and Boehl, Stopher, Graves & Deindoerfer, Louisville, Hunter Shumate, Irvine, on the brief, for appellee.

STEWART, Judge.

Plaintiff, Shirleen Jordon, age 14, suing by her father, Shirley Jordon, as next friend, sought to recover from defendant, Carr Clough, $50,516.80 as damages for personal injuries she allegedly sustained in an automobile accident. The trial judge directed a verdict for defendant at the conclusion of plaintiff's evidence. Plaintiff appeals, insisting a jury should have been allowed to pass on her claim.

Appellant, Shirleen Jordon, was struck on June 22, 1956, around 4:30 p. m., by an automobile owned and driven by appellee on Kentucky Highway No. 89, the Winchester Road, while crossing the hard surface. She was returning home from Irvine in a Ford pickup truck operated by her uncle, Shelby Jordon, and the latter had pulled over onto the shoulder on the east side of the highway across from her residence to let her out. After appellant descended to the ground, she went around behind the truck, then stepped out onto the highway into the path of appellee's car, which was approaching from the direction of Winchester and proceeding toward Irvine, and in a matter of seconds appellee's car came in contact with her. She was severely injured in the pelvic region of her body and in her hips.

Appellant testified she looked up and down the highway before going out into the course of vehicular travel, she saw no traffic coming from the north or from the direction of Winchester, she took three steps onto the pavement and then she received the impact from appellee's car. Her uncle, Shelby Jordon, stated that, at the time he stopped his truck, he saw three cars moving toward him, that there was an unobstructed view along the highway of at least 1200 feet to the north or toward Winchester, and that he had slowly pulled down the highway about 60 feet, not having yet gotten into high gear, when the unfortunate incident happened.

Appellant's witness, Ernest Watson, testified he was following appellee's car prior to the mishap at a distance of 50 to 100 feet. He said his speed was 45 to 50 miles per hour and that his and appellee's vehicles maintained relatively the same distance between them up to the time the girl was hit. According to Watson, appellant ran out from behind the truck onto the hard surface as appellee's car was just about even with the front of the truck. He stated: "It was all done so quick." Watson's testimony as to how the accident occurred was contradicted in two respects: Appellant declared, it will be remembered, that no cars were coming toward her when she started across the hard surface. Other witnesses placed the speed of appellee's car as great as 80 miles per hour.

Appellant first argues that appellee was under a duty to sound his horn upon seeing Shelby Jordon's truck parked on the east side of the road. With this contention we do not agree. As was stated previously, appellee was driving south in the west lane of traffic when he saw the truck on the opposite east shoulder of the highway facing north. KRS 189.340(1) provides that an operator of a motor vehicle shall sound his horn when overtaking and passing another vehicle traveling in the same direction. It has been held, however, that compliance with this subsection of law is not strictly required when one is passing a parked vehicle. See Schultz v. Smith's Adm'r, 314 Ky. 198, 234 S.W.2d 676; Monroe v. Townsend, 308 Ky. 123, 213,

S.W.2d 803. Certainly, by its very terms KRS 189.340(1) has no application here, since the truck was over on the other side of the highway headed toward appellee's car as it came toward it.

■ We are not unmindful that KRS 189.570(4) (d) provides a warning by horn shall be sounded when necessary. This means such a signal shall be given when it appears necessary to the operator of the car. In the case at bar the evidence reveals appellee did not become aware of appellant's presence in front of his car until an instant before he collided with her. She was completely hidden behind the truck as he drew near it. When he did observe her a distance less than 60 feet from the point of the impact, a split second before the mishap, the sounding of his horn would have been a futile gesture. See Schultz v. Smith's Adm'r, cited above.

■ It is next maintained appellee was traveling at an excessive rate of speed and that this created a prima facie case of negligence against him. We have heretofore mentioned Ernest Watson's testimony to the effect that appellee was traveling 45 to 50 miles per hour. Against this, there was the testimony of Shelby Jordon who estimated appellee's speed at 60 to 70 miles per hour, and there was the statement of Edward Gene Jordon, appellant's 12-year-old brother, who said that appellee's car was going "about 70 or 80 miles an hour."

In the light of the evidence developed in this case, it is impossible to conceive how speed could have been a proximate cause of the injuries sustained by appellant. Assuming, however, appellee was in some manner to blame and his negligence was a cause of the accident, we are convinced appellant was herself guilty of contributory negligence. On the occasion in question appellant was required to exercise ordinary care for her own safety which included the duty to observe traffic conditions on the highway and to keep clear of placing herself in a position of peril where the operator of an automobile might be unable to avoid injuring her. See Monroe v. Townsend, cited above.

■ While appellant's testimony implies she may have looked both ways before proceeding onto the hard surface, the proven circumstances demonstrate she could not have looked in the direction of appellee's automobile without having seen it. The fact that appellant took only three steps before she was struck, which she admitted was the distance she traveled on the hard surface immediately before the impact, is ample proof in itself that appellee's car was so near her at the time that colliding with her was inevitable. This conclusion is fortified by the evidence of appellant's witness, Ernest Watson, who pointed out that appellee's car was even with the front of the truck, or not quite 60 feet away from the place where she started across the highway, when appellant suddenly appeared in the pathway open to traffic, with the result that appellee made contact with her.

■ Finally, appellant maintains that, conceding she was guilty of contributory negligence, even so, appellee could have avoided the harmful consequences visited upon her after he became aware of her dangerous plight. She relies upon what is known as the doctrine of discovered peril, or the legal concept of "last clear chance." In Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758, 760, in discussing the basis for invoking this principle, we said:

"In applying the rule, we have consistently recognized that the defendant must, as a matter of fact, have the last clear chance. It is not a speculative chance or a possible chance. In each case there must be proven facts which justify the conclusion that the plaintiff's peril should have been discovered. Such peril must be reasonably obvious."

■ In the Thompson opinion a number of cases were abstracted in which a "last

clear chance" instruction was upheld. Each of these decisions, however, involved a fact situation where the plaintiff was in *full* or *plain* view of the defendant an appreciable distance from the place of the accident. This Court stated that in such cases a new duty devolved upon the defendant, all antecedent negligence being disregarded, because the perilous position of the plaintiff had become apparent and the defendant had an opportunity to avoid the disaster. As has been disclosed, appellant was visible on the highway only after the truck met and passed appellee. From this fact, we believe it was amply established appellee had no chance at all, much less a last clear chance, to avoid hitting appellant.

The evidence shows in our opinion that appellant's own imprudent conduct in not looking before she went out on the highway from behind her uncle's truck was primarily the basis for the happening of this unfortunate accident.

Wherefore, the judgment is affirmed.