**Edward L. MACKEY, Adm'r of the Estate of Gregory Burkhead, Deceased, Appellant,**

**v.**

**Homer SPRADLIN et al., Appellees.**

Court of Appeals of Kentucky.

July 2, 1965.

Modified on Denial of Rehearing
Dec. 17, 1965.

Richard P. Watts, Luther M. Roberts, Louisville, for appellant.

John G. O'Mara, Louisville, for Spradlin & Mullins.

Joseph E. Stopher, Boehl, Stopher, Graves & Deindoerfer, Louisville, for Mr. Softee of Louisville, Sinkhorn & Simmons.

PALMORE, Judge.

At about 5:45 P.M. on April 27, 1961, an ice cream dispensing truck stopped on the north side of Knopp Avenue, a 2-lane street in a residential neighborhood of suburban Louisville, for the purpose of selling ice cream cones and the like. At once a number of children gathered around, including 7-year old Gregory Burkhead, who lived across the street south of and almost directly opposite the place where the ice cream wagon was standing. As he attempted to re-cross the street homeward bound with his ice cream cone Gregory collided with a passing dump truck and was killed.

The administrator of Gregory's estate brought this suit for wrongful death against the respective operators and owners of the ice cream wagon and the dump truck and appeals from a judgment entered pursuant to a verdict directed in favor of all the defendants at the conclusion of plaintiff's evidence.

Knopp Avenue is a dead-end street leading eastwardly from Grade Lane, outside the city limits of Louisville. It is lined on both sides by small houses, interspersed by at least one store building, a grocery. The main traveled portion of the street consists of an asphalt surface a little under 18 feet wide, bordered on each side by a narrow shoulder and then a ditch. There are no sidewalks. Mail boxes and newspaper delivery tubes are scattered up and down the way on the shoulders between the pavement and the ditches.

The ice cream wagon had traveled down to the end of Knopp Avenue, turned around, and started back westwardly toward Grade Lane, making several stops along the way. It was equipped with flashing lights and a ringing bell and was decorated with pictures of sundaes and milk shakes and two lights shaped like ice cream cones. It was a large box-like vehicle, six feet nine inches wide, over eight feet high, and 17 feet long. Two operators were aboard, Simmons driving and Sinkhorn selling the wares. Sinkhorn was in charge.

There were six children in the Burkhead family. Gregory, the youngest, his brother Robert, 12, and one or more of the others were in back of their home playing ball. Linda Sue, 13, an older sister, was inside studying her school work. When they heard the bells of the ice cream wagon

Linda Sue approached her mother for some money to buy an ice cream cone and Robert came into the house for the same purpose. Mrs. Burkhead gave Linda Sue enough money to buy five cones and instructed her and Robert to tell the rest of the children to stay in the yard. After Linda Sue and Robert had crossed the street Mrs. Burkhead stepped to the front door and observed that the other children were in the front yard, whereupon she returned to her normal pursuits within.

Sinkhorn conducted the sales operation in this particular instance out of the right-hand side of the ice cream wagon. Several children were present, gathering on or about the north shoulder of the street. There was conflicting evidence as to whether the right wheels of the vehicle were on the pavement or on the shoulder; however, it makes no great difference. Nobody noticed Gregory's movements, but it is clear that he crossed the street and got an ice cream cone from someone. At the instant of the tragedy Linda Sue was still at the serving window and Robert was with her. Linda Sue and Robert testified that they were unaware of Gregory's presence until they heard screams, and discovered him lying in the middle of the street. The only acknowledged eyewitness was Mullins, driver of the dump truck.

Mullins gave the investigating officers a statement to the effect that he was proceeding eastward on Knopp Avenue for the purpose of making a delivery somewhere near the end of the street. As he passed the stopped ice cream wagon to his left, the child ran from behind it into the side of the dump truck in front of its left rear dual wheels. Mullins stopped as soon as he could, at a point 60 feet beyond the boy's body, which lay some 12 feet east of the ice cream wagon. According to this statement, the dump truck was traveling at a speed of five miles per hour(!) at the time of the accident. There was no other evidence concerning its operation. The officers found the truck's brakes in good or-

der. They did not ask Mullins whether he had sounded his horn. Gregory's ice cream cone was found lying on top of the spring in front of the left rear dual wheels.

Simmons, driver of the traveling ice cream parlor, was learning the route from Sinkhorn, the regular operator, preparatory to becoming his relief driver. At the time of the accident Simmons's attentions were directed toward Sinkhorn, behind him, and he did not see the dump truck as it approached.

These are the essential facts on which the trial court determined that none of the defendants had breached a duty of care toward the victim of the accident. There was nothing in the evidence to rebut the presumption that the child himself was not legally accountable for his actions. Cf. Baldwin v. Hosley, Ky., 328 S.W.2d 426, 430 (1959).

With respect to the dump truck it is obvious that the operator was under a duty of extreme caution as he passed by the ice cream wagon. The question is whether the evidence adduced by the plaintiff was sufficient to justify an inference that Mullins failed in any way to observe the required standard of care and, if so, that such omission was a proximate cause of the little boy's death.

It is contended that in the exercise of ordinary care Mullins should have stopped (or at least that a jury could reasonably so find), as he would have been required by statute to do if the ice cream wagon had been a school or church bus. Cf. KRS 189.370. The propensity of young children to dart or run into the street must, of course, be anticipated by motorists who see or by the exercise of ordinary care could see them near the edge of the street Lehman v. Patterson, 298 Ky. 360, 182 S.W.2d 897, 899 (1944); United Fuel Gas Co. v. Friend's Adm'x, Ky., 270 S.W.2d 946 (1945). In Kentucky Power Co. v. Thompson, Ky., 335 S.W.2d 915, 918 (1960), a case in which the driver of a truck

traveling on a roadway 12 to 13 feet in width could see two young girls walking with their backs to him along a narrow margin off the left edge of the road, it was observed that the driver, upon noticing the girls "in a position of possible peril, would have been under a duty either to stop his truck before reaching them or to move by them so carefully and slowly as to reduce the chance of striking them almost to zero." We think the same principle applies in this case because, although Mullins did not in advance see the particular child who ran out into the street, he could not have failed to see the group of children gathered at the ice cream wagon and, in the exercise of ordinary care, to anticipate that some child momentarily hidden from view by the bulk of the ice cream wagon might suddenly emerge from behind it. It was his duty, we believe, either to stop his truck as it came abreast of the rear end of the ice cream wagon or to move by it so carefully and slowly as to reduce to a minimum the chance of collision with one or more of the children.

■ The fact that with good brakes and the best efforts of the driver it required 60 to 72 feet to bring the truck to a halt refutes the driver's assertion that he was proceeding at only five miles per hour and, in our judgment, would support an inference that he was moving at a speed that was excessive under the circumstances of the case.

■ We are unable to say that the child's running into the truck, as distinguished from the truck's striking the child head on, is dispositive on the question of proximate cause. In most but not all cases it has been held under such circumstances that speed could not have been a proximate cause. See, for example, Jordon v. Clough, Ky., 313 S.W.2d 581, 584 (1958), and Hatfield v. Sargent's Adm'x, 306 Ky. 782, 209 S.W.2d 306, 308 (1948). Hoskins v. Hoskins, Ky., 316 S.W.2d 368 (1958), in which a child ran from a school yard into the rear wheel of a passing truck on a public street, is distinguishable in that there was no obstruction in or next to the street. Presumably the child would have run into the truck had it been parked next to the curb, because there was nothing to prevent her seeing it as she dashed toward the street. On the other hand, in Eichstadt v. Underwood, Ky., 337 S.W.2d 684, 686 (1960), a case in which an elderly pedestrian crossing at an intersection walked into the rear wheel of an automobile which in making a turn had appeared suddenly in her path, it was held that the evidence gave rise to "a factual issue as to whether the automobile * * * appeared so suddenly in front of, and so close to appellee that her previously initiated forward movement carried her involuntarily into the * * * car." On the same theory, if Mullins's truck was moving too fast as it passed the ice cream truck at close quarters, its speed and sudden emergence from a concealed position raise a factual issue as to whether the child had an opportunity to observe and react to it in time to check his own momentum. If he did not, the speed of the truck could be found to have been a proximate cause of the accident. Moreover, it can hardly be denied that the motion of the truck was a factor in the severity of injury inflicted by the collision. As it was, Mullins admitted he saw the boy run into the side of the truck. Had he been traveling at a crawl, as he should have been under the circumstances of the case, a jury might reasonably conclude that he could have stopped almost instantly and that the child would not have been killed.

We realize the closeness of this point but are of the opinion that the circumstances thus far shown, without further explanation or elaboration in the form of defensive testimony, are sufficient to raise a permissive inference of negligence on the part of the truck driver as a proximate causal factor in the accident. Hence it was error to direct a verdict in favor of the truck driver and his employer under the

state of the evidence at the close of plaintiff's case in chief.

Whether the operators of the ice cream dispensary violated any duty of care toward the child presents a novel question in this jurisdiction. For a discussion of decisions from other states in kindred situations see annotation, "Liability of vendor or huckster attracting children to street to child injured by another automobile," 74 A.L.R.2d 1056, and cases therein cited. See also Sidders v. Mobile Softee, Inc., Ohio App., 184 N.E.2d 115 (1961); Baker-Evans Ice Cream Co. v. Tedesco, 114 Ohio 170, 150 N.E. 745, 44 A.L.R. 430 (1926); Maloney v. Howard Johnson Inc., 5 A.D.2d 1015, 174 N.Y.S.2d 257 (1958); Borden v. Daniel, 48 Tenn.App. 314, 346 S.W.2d 283 (1960), Mead v. Parker, 221 F.Supp. 601 (E.D.Tenn.1963), and Vought v. Jones, 205 Va. 719, 139 S.E.2d 810 (1965); all of which can reasonably be compared in some respects and distinguished in others.

Much argument has been devoted to the question of whether the ice cream wagon was stopped in violation of KRS 189.450 and, if so, whether such violation was a proximate cause of the accident. We find it immaterial,[1] because in either event it is our conclusion that as a matter of law the operators of this vehicle failed to exercise reasonable care to prevent the accident.

"When an act is negligent if done without reasonable care, the care which the actor is required to exercise to avoid being negligent * * * is that which he, as a reasonable man, should recognize as necessary to prevent the act from creating an unreasonable risk of harm to another." Restatement of Torts, Negligence, § 298.

"A negligent act may be one which: * * * (b) creates a situation which involves an unreasonable risk to another because of the expectable action of the other, a third person, or a force of nature." Id., § 302.

■ "An act is negligent if the actor intends it to affect, or realizes or should realize that it is likely to affect, the conduct of another, a third person or an animal in such a manner as to create an unreasonable risk of harm to the other." Id., § 303.

This is not, of course, an "attractive nuisance" case. Nevertheless, it is invested with much the same policy considerations the attractive nuisance theory was designed to recognize and satisfy. Those same basic considerations are embodied in the above quoted sections of the Restatement of Torts.[2] The differences are superficial. If one who maintains a dangerous condition on his own premises can be held liable to a child trespasser, why should not one who knowingly creates a dangerous condition elsewhere be likewise responsible to a child he realizes is likely to become involved in it? Indeed, it seems to us that in the latter instance the creator of the hazard is in a less defensible posture than the owner of premises on which a trespass must be committed before injury can occur. In this particular type of situation the danger is enhanced by the sense of haste that is purposely aroused in the children of a neighborhood by the tinkling of bells and flashing of lights heralding the imminent arrival of an attraction that will stay but a moment and be gone unless they come at once. The responsibility of one who knowingly provokes into action the natural recklessness of irresponsible children ought surely be proportionate to the degree of danger he thereby creates.

Cf. footnote 7 to Cottrell v. Martin A. Ceder Co., Inc., Ky., 376 S.W.2d 536, 538 (1964).

1. The position of the parked vehicle undoubtedly was a proximate causal factor in the accident, but the fact that it was there in violation of the law would have significance only if the accident in question were held to be within the scope of what the statute was intended to prevent.

2. Compare Restatement of Torts, Negligence, § 339.

■ Common sense and the most minimal regard for humanity suggest that one who intentionally attracts small children to a place in or so close to a street or highway that there is danger of their being struck by passing traffic should be under a duty to maintain a lookout for such traffic and, if he observes or in the exercise of ordinary care should observe a vehicle approaching close enough to constitute an immediate hazard, to warn the children present in the immediate area of the attraction or make such other reasonable effort to prevent their being injured as may be necessary in the circumstances. This in our opinion is what a reasonably prudent person would do, and it is because the ice cream vendors admit they did not keep any lookout whatever that we say they were negligent as a matter of law.

■ The negligence of Mullins in operating the dump truck (if it be found that he was negligent) was not an independent act superseding the negligence of the ice cream vendors, because it was within the realm of reasonable foreseeability. Restatement of Torts, Negligence, § 447; Hines v. Westerfield, Ky., 254 S.W.2d 728 (1953); Roberts v. Taylor, Ky., 339 S.W.2d 653, 658 (1960); Mackey v. Allen, Ky., 396 S.W.2d 55 (decided May 7, 1965). The gist of their negligence is that they should have realized the danger of just such an accident, with or without some degree of negligence on the part of the passing motorist.

Among the numerous decisions of this court to which reference is made in the briefs, the one cited in behalf of the ice cream vendors as most nearly in point is Winders' Adm'r v. Henry Bickel Co., 248 Ky. 4, 57 S.W.2d 1009 (1933). In that case a contractor repairing a street in Louisville blocked off the south two-thirds of the width of River Park Drive at a point midway between 31st and 32d Streets. A six-year old child going home from school located on River Park Drive two blocks west of the place where the work was being done was hit and fatally injured by a west-bound truck in the north third of the street as she ran from the south to the north side of the street in order to go around the obstruction. In a suit by her administrator against the contractor and the truck driver a directed verdict for the contractor was approved by this court in an opinion apparently premised on the theory that the action of the contractor in blocking the sidewalk and street was a "prior and remote" but not a proximate cause of the accident.

As we have already pointed out, to break the chain of proximate causal connection an intervening action must be one that is not reasonably foreseeable by the antecedently negligent actor who is thereby relieved of responsibility. Whatever reservations we may have with respect to the soundness of Winders' Adm'r v. Henry Bickel Co., supra, certainly it is distinguishable in degree. Perhaps Bickel should have foreseen that children might cross the street and get run over in the process of going around his obstruction, but at least he did not solicit them. In this case the children were, in substance, consciously and directly invited into an area of danger, and it does not seem unreasonable to expect of the inviters a proportionately higher degree of foresight.

The admitted inattention of the operators of the ice cream wagon is conclusive of their negligence, from which it follows that the directed verdict in favor of them and their employer was erroneous. If upon another trial the evidence in this respect is substantially the same, Simmons and Sinkhorn may be held liable as a matter of law.

The judgment is reversed with directions for a new trial.

STEWART, Judge (dissenting).

I dissent from the opinion because I believe it sets forth principles on the subjects hereinafter discussed which are

so contrary to the established law that trial courts and members of the bar will be confused as to what the law is, or how this Court will react in the future, when these subjects come up for a determination.

Although the driver of the dump truck testified he was traveling at a speed of five miles per hour, and there is no rebutting evidence on this point, the opinion asserts there was an "inference" he was proceeding at an excessive rate of speed because "the best efforts of the driver" required 60 to 72 feet in which to stop the truck. It is my view this statement is based upon mere conjecture.

In referring to the speed of the dump truck appellant admits in his brief: "There was nothing to indicate excessive speed at the time of the accident." He then proceeds to argue that the truck should have stopped. The opinion wobbles around with this idea and finally comes up with the suggestion that the driver should have lowered the speed of the truck to an irreducible minimum.

Obviously the driver must move his dump truck along at some time. The truck in fact had already passed the position where the child was concealed behind the ice-cream wagon when (and we use the language of the opinion) "the child ran from behind it into the side of the dump truck on front of its left rear dual wheels." I do not believe the speed of the dump truck played any part in, and consequently was not a proximate cause of, the accident. Nor do I believe we can speculate that the injurious consequences would have been less severe if the truck had been moving more slowly.

The principles announced in the following cases would seem to be controlling in respect to the facts presented: Hoskins v. Hoskins, Ky., 316 S.W.2d 368; Jordon v. Clough, Ky., 313 S.W.2d 581; Hatfield v. Sargent's Adm'x., 306 Ky. 782, 209 S.W. 2d 306; Lieberman v. McLaughlin, 233 Ky. 763, 26 S.W.2d 753; Knecht v. Buckshorn, 233 Ky. 329, 25 S.W.2d 727.

We come now to the opinion's holding that the act of stopping the ice-cream wagon on the street gave rise to a condition that imposed a duty on those in charge of it "to warn the children present in the immediate area of the attraction or make such other reasonable effort to prevent their being injured as may be necessary in the circumstances."

This Court has never passed on the exact set of facts adduced by the evidence in this case. A recent Ohio case that is very much in point is Sidders v. Mobile Softee, Inc., Ohio App., 184 N.E.2d 115. The petition alleged that the defendant corporation was operating on the public streets of Xenia, Ohio, *at night,* a brightly illuminated ice-cream truck, equipped with a bell and loudspeaker; that a seven-year-old girl was thereby induced to cross the street from her home; and that, as she was undertaking to return home, she was struck by a passing automobile, because her view of the approaching automobile was obstructed by the ice-cream truck. The trial court sustained a demurrer to the petition. Upon an appeal the action of the trial court was upheld, the appellate court stating:

> "The defendant is accused of being a sort of modern Pied Piper and as such responsible for any and all mishaps to its young customers. It is not an insurer of the safety of its patrons. Nor is it charged with a violation of law. The operation of an ice cream vending truck attractive to children is admittedly not a nuisance. * * *"

At common law, or in the absence of a prohibitive statute, a motorist can stop his car whenever and wherever he wants to. This is incidental to the right to travel. See 8 Am.Jur.2d, Automobiles and Highway Traffic, sec. 816, p. 373.

The Court of Appeals of Maryland in Bloom v. Good Humor Ice Cream Co. of Baltimore, 179 Md. 384, 18 A.2d 592, passed on the exact question raised by the causation issue in the case now before this

Court. In that case the defendant's ice-cream truck was parked about eight feet from the right-hand curb of a public thoroughfare in the City of Baltimore. The infant plaintiff, a boy ten years of age, crossed the street and purchased some ice cream. As he was returning to the other side he was struck by a passing car. Suit was filed against the Good Humor Ice Cream Company. A recovery was denied; an appeal was taken. The Court of Appeals of Maryland held that the acts charged to the defendant-appellee were not the proximate cause of the plaintiff-appellant's injuries and found for the defendant-appellee. That court said on that point:

"From the alleged facts in this case, it appears very clear that the accident to the appellant was brought about entirely by reason of the appellant leaving the ice cream truck, walking behind it to a place between the truck and the east sidewalk, and the sudden appearance of the automobile. That act on the part of the appellant, and the approaching automobile, were the separate and intervening causes of the accident. * * *"

The Henry Bickel Company case, the facts concerning which are set forth in some detail in the opinion, had this to say on the question of the immediate cause of the death of the six-year-old child involved, who was struck by a truck driven by one Bell:

"The question narrows down to this: Can the Henry Bickel Company be held responsible for the death of this child, who was not struck or injured by any of the obstructions it placed in the street, and the most that can be said against it is, it created the conditions that caused her to have to cross to the north side of the street, in doing which she was struck and

killed by an independent agency, to wit, the truck owned and driven by Bell. The answer is, 'No.' * * *"

Continuing, the Court made this observation which applies in a most particular way to the esoteric generalities that are formulated to support the opinion. That case stated at page 1010 of 57 S.W.2d:

"If once we pass the immediate cause, we enter a limitless field of speculation. Lord Bacon puts it this way: 'It were infinite for the law to consider the causes of causes and their impulsions one of another; therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree.'"

The issue of proximate cause presented in the Henry Bickel Company case is exactly the same as the issue of proximate cause presented in this case. The only possible way that case is distinguishable from the instant one is that the child was not attracted to the scene by a vehicle purveying ice cream.

The opinion admits, however, that the case at bar is not an attractive nuisance case. Nevertheless it follows attractive nuisance principles in arriving at the conclusion it reaches. I call attention to Burkett v. Southern Belle Dairy Co., Ky., 272 S.W.2d 661, where the matter of attractive nuisance in this type of case is laid to rest, and where, incidentally, the ice-cream truck involved was parked on the public street. See also Ice Delivery Company v. Thomas, 290 Ky. 230, 160 S.W.2d 605.

I would affirm the judgment.

MONTGOMERY and MOREMEN, JJ., join me in this dissent.