[L. A. No. 29389. In Bank. July 31, 1967.]

SCOTT SCHWARTZ, a Minor, etc., Plaintiff and Appellant, v. HELMS BAKERY LIMITED et al., Defendants and Respondents.

John F. Dunne, Jr., Michael P. Balaban and Dunne & De Loach for Plaintiff and Appellant.

Morgan, Wenzel, Lynberg, Stearns & Morris, Morgan, Wenzel, Lynberg & Morris, Allen J. Kent, William Marshall Morgan and John P. McNicholas for Defendants and Respondents.

TOBRINER, J.—Plaintiff Scott Schwartz, age four, was struck by an automobile as he crossed a street in the middle of

the block to buy a doughnut from defendant Taylor, the driver of a retail truck owned by defendant Helms Bakery Limited. The trial court granted a motion for nonsuit. We reverse. We hold that by undertaking to direct the child to an assigned rendezvous with the truck the defendants assumed a duty to exercise due care for his safety. The trial court therefore erroneously withdrew from the jury the questions whether defendants negligently discharged their duty and whether such negligence proximately caused plaintiff's injury.

We state the facts of the case according to the familiar rule that we view the evidence most favorably to plaintiff, disregarding conflicting evidence on behalf of the defendants, and indulging every reasonable inference in favor of plaintiff. We may affirm the judgment of nonsuit only if no substantial evidence would support a verdict for plaintiff. (*O'Keefe* v. *South End Rowing Club* (1966) 64 Cal.2d 729, 733 [51 Cal.Rptr. 534, 414 P.2d 830].)

Plaintiff suffered injury a few minutes after 5 p.m. in the gathering dusk of January 27, 1964, when he was struck by the car of defendant Ferguson,[1] which was traveling south along Westgate Avenue. The apartment house in which plaintiff lived is located 150 feet north of Iowa Avenue on the west side of Westgate Avenue, a 40-foot-wide two-way through street. Approximately seven minutes before the accident plaintiff encountered the driver at the southwest corner of Westgate and Iowa Avenues. The driver saw plaintiff run down the sidewalk from his house and dart across Iowa to reach the truck, averting injury only when a car proceeding west on Iowa stopped abruptly to avoid hitting him.

Plaintiff asked, ''Would you wait for me? I want to go home and get a dime.'' The driver testified, ''I knew where the lad lived, so I told him . . . that I would go up Westgate Street and I would meet him up the street.'' The driver said nothing else, and the plaintiff ran back across Iowa toward his home.

After making two stops totalling about three minutes almost directly across the street from plaintiff's house, the driver stopped to transact another sale at a point farther up the block, 200 feet beyond plaintiff's house. At that moment, after the driver had spoken with his customer for about four

[1]Plaintiff filed a dismissal with prejudice as to defendant Ferguson; the question of her liability is not before us.

minutes, and had ceased to expect that plaintiff would return, plaintiff called, shouting from across the street: "Hey, wait!" The driver started to say, "Don't run across the street!" at the same time that plaintiff ran from behind a parked car into the path of an oncoming vehicle.

Defendants contend that under these circumstances they bore no duty to plaintiff to exercise due care for his safety. We explain that since the driver undertook to direct the conduct of the child, he entered into a legal relationship with him. A second and concomitant legal relationship arose between the child and the driver when the driver invited the child to become a customer of his business. From each such relationship the common law imposes a duty upon defendants to exercise ordinary care for the safety of persons such as plaintiff, and to avoid the creation of unreasonable risks of foreseeable harm.[2] We believe that reasonable minds could differ upon the questions whether defendants' discharge of their duty of due care failed to meet the standard of reasonableness, and, if so, whether such breach proximately caused plaintiff's injury. We hold that the court erred in taking these questions from the jury.

We note initially that three other jurisdictions, which have dealt recently with cases presenting circumstances closely analogous to those before us, have required that street vendors adhere to a high duty of care for the safety of children purchasing their wares.

In *Mackey* v. *Spradlin, supra*, 397 S.W.2d 33, the opinion discloses that the plaintiff darted from behind an ice cream truck into the path of an oncoming car. The court reversed a directed verdict for defendants, one of whom was the owner of the truck. Disclaiming application of the attractive nuisance doctrine, the court nonetheless said: "the danger is enhanced by the sense of haste that is purposely aroused in children of a neighborhood by the tinkling of bells and flashing of lights heralding the imminent arrival of an attraction

---

[2]By grounding the scope of the duty of due care on each of these two bases we need not reach, and express no view concerning, the question whether defendants' truck constituted an "attractive nuisance," in that its characteristic whistle and assortment of pastries should reasonably have been expected to draw small children. While we recognize that, as applied to children, the former doctrines are based upon policies and duties similar to the latter (see, for example, *Jacobs* v. *Draper* (1966) 274 Minn. 110, 142 N.W.2d 628, 634; *Mackey* v. *Spradlin* (Ky. 1965) 397 S.W.2d 33, 37), the attractive nuisance doctrine, as such, is generally applied only to trespassers. (Harper & James, Torts (1956 ed.) pp. 1447-1449; Prosser, Torts (3d ed.) pp. 372-377.)

that will stay but a moment and be gone unless they come at once. . . . Common sense and the most minimal regard for humanity suggest that one who intentionally attracts small children to a place in or so close to a street or highway that there is danger of their being struck by passing traffic should be under a duty to maintain a lookout for such traffic and, if he observes or in the exercise of ordinary care should observe a vehicle approaching close enough to constitute an immediate hazard, to warn the children present in the immediate area of the attraction or make such other reasonable effort to prevent their being injured as may be necessary in the circumstances.'' (*Id.* at 37-38.)

In another ''Good-Humor-man'' case, *Jacobs* v. *Draper, supra,* 142 N.W.2d 628, the court affirmed an order of the trial court denying defendants' motion for judgment notwithstanding the verdict or for a new trial. Plaintiff's decedent, a three and one-half-year old, had been killed by a passing car after running from behind an ice cream truck. The court relied in part upon the analysis of Dean Prosser: ''when children are in the vicinity, much is necessarily to be expected of them which would not be looked for on the part of an adult. It may be anticipated that a child will dash into the street in the path of a car . . . . In all such cases, the question comes down essentially to one of whether the risk outweighs the utility of the actor's conduct.'' (*Id.* at 633; Prosser, Torts (3d ed.) § 33, pp. 175-176.)[3]

---

[3]Prosser identifies some of the factors involved in balancing risk against utility as elements of the standard of ''unreasonable risk'' and of the ''application of the standard'' to the facts: ''The duty . . . becomes merely a matter of the customary process of multiplying the probability that such negligence will occur by the magnitude of the harm likely to result if it does, and weighing the result against the burden upon the defendant of exercising such care. The duty arises, in other words, only where a reasonable man would recognize the existence of an unreasonable risk of harm to others through the intervention of such negligence.

''The problem is whether 'the game is worth the candle.' . . . Chief among the factors which must be considered is the social value of the interest which the actor is seeking to advance. . . . Consideration must also be given to any alternative course open to the actor. . . . the ease with which the actor himself may take precautions.'' (Prosser, Torts (3d ed.) §§ 31, 33, pp. 151, 175, 180; see also *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 309-310 [29 Cal.Rptr. 33, 379 P.2d 513]; *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]; *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847].)

Since the questions of the reasonableness of the risk of harm and the application of the standard of due care to particular facts are mixed questions of law and fact (or questions of ''law application''; see Weiner, *The Civil Jury Trial and the Law-Fact Distinction* (1966) 54

The Georgia Court of Appeals reached a result similar to that in *Mackey* and *Jacobs, supra,* in *Landers* v. *French's Ice Cream Co.* (1958) 98 Ga.App. 317 [106 S.E.2d 325, 74 A.L.R.2d 1050]. The court reversed an order sustaining a general demurrer in an action arising out of injuries caused by a speeding auto which struck the five-year-old plaintiff as he crossed the street to reach defendant's ice cream truck.

Although the California courts have not faced the precise problem before us, they have recognized (1) that one who undertakes to direct the actions of another must do so with due care; (2) that one who invites another to do business with him must exercise due care for his safety upon all premises of the business over which he exercises control; (3) that in dealing with a young child one must exercise greater caution than in dealing with an adult; and (4) that foreseeable intervening acts constitute no excuse from liability for negligence. After setting forth the authorities which establish these controlling principles, we apply them to the instant facts.

■ (1) Firmly rooted in the common law lies the concept that although one individual need do nothing to rescue another from peril not of that individual's own making, nevertheless, "He who undertakes to do an act must do it with . . . care." (*Johnston* v. *Orlando* (1955) 131 Cal.App. 2d 705, 709 [281 P.2d 357]; *Valdez* v. *Taylor Automobile Co.* (1954) 129 Cal.App.2d 810, 817 [278 P.2d 91]; *Griffin* v. *County of Colusa* (1941) 44 Cal.App.2d 915, 923 [113 P.2d 270]; Rest.2d, Torts, §§ 324, 324A; 38 Am.Jur. 659; Negligence, § 17.) "[I]f the defendant enters upon an affirmative course of conduct affecting the interests of another, he is regarded as assuming a duty to act, and will thereafter be liable for negligent acts or omissions . . . ." (*Valdez* v. *Taylor Automobile Co., supra,* 129 Cal.App.2d 810, 817, citing Prosser, Torts, § 32, p. 190.) "If the conduct of the actor has brought him into a human relationship with another, of such character that sound social policy requires some affirmative action or some precaution on his part to avoid harm, the duty to act or take the precaution is imposed by law. . . . Where a person is under the special protection of another, the latter is bound to exercise reasonable care to prevent harm to him, and this duty may include protection from the dangerous conduct

Cal.L.Rev. 1867, 1872-1878) which we have traditionally regarded as better answered by juries, courts may intervene to limit the discretion of juries to apply the standard of due care only when reasonable minds could not differ as to the application of such standard.

of third persons.'' (Harper & Kime, *The Duty to Control the
Conduct of Another* (1934) 43 Yale L.J. 886, 898; see also
*Silva* v. *Providence Hospital of Oakland* (1939) 14 Cal.2d
762, 775 [97 P.2d 798]; *Perry* v. *D. J. & T. Sullivan, Inc.*
(1933) 219 Cal. 384, 390 [26 P.2d 485].)[4]

(2) The courts have long held that one who invites
another to do business with him owes to the invitee the duty
to exercise reasonable care to prevent his being injured on
"the premises." The physical area encompassed by the term
"the premises" does not, however, coincide with the area to
which the invitor possesses a title or a lease. The "premises"
may be less[5] or greater[6] than the invitor's property. The
premises may include such means of ingress and egress as a
customer may reasonably be expected to use. The crucial ele-
ment is control. "It is clear . . . that if the tenant exercises
control over a common passageway outside the leased prem-
ises, he may become liable to his business invitees if he fails to
warn them of a dangerous condition existing thereon."
(*Johnston* v. *De La Guerra Properties, Inc., supra,* 28 Cal.2d
394, 401 [170 P.2d 5].)[7] An invitor bears a duty to warn an
invitee of a dangerous condition existing on a public street or
sidewalk adjoining his business which, because of the in-

---

[4]Although defendants rely upon *Amaya* v. *Home Ice, Fuel & Supply
Co., supra,* 59 Cal.2d 295, for the proposition that the court's initial re-
sponsibility to declare the existence and scope of a duty permits it to
find in this case that defendants owed plaintiff no duty under the stipu-
lated facts, and that no question remained for the jury's resolution,
*Amaya* does not control the present case. *Amaya* held that a truck driver
incurred no liability to a mother of a child struck by a carelessly driven
truck because the driver owed no duty to protect the mother from harm
caused by her fright. The court based its decision mainly on the special
"administrative . . . socio-economic and moral" difficulties which would
be encountered by the creation of such a duty. Whatever the resolution
of such an issue may be, it has no bearing here. We create no new duty in
this case but leave to the jury the question whether the driver prudently
performed a duty long established by the common law.

[5]See, for example, *Schwerdtfeger* v. *State of California* (1957) 148
Cal.App.2d 335, 345 [306 P.2d 960].

[6]See, for example, *Kopfinger* v. *Grand Central Public Market* (1964)
60 Cal.2d 852, 857 [37 Cal.Rptr. 65, 389 P.2d 529]; *Johnston* v. *De La
Guerra Properties, Inc.* (1946) 28 Cal.2d 394, 399 [170 P.2d 5]; *Ross* v.
*Kirby* (1967) 251 Cal.App.2d 267, 271 [59 Cal.Rptr. 607].

[7]In *Johnston* the court reversed a nonsuit granted in an action for
injuries caused when plaintiff fell off a low wall of a parking lot onto a
walk serving as an approach to a restaurant of defendant, even though
defendant's lease covered only the restaurant building. (See also *Merrill*
v. *Buck* (1962) 58 Cal.2d 552, 561-562 [25 Cal.Rptr. 456, 375 P.2d 304]
[real estate agent liable for latent defect in subsequently leased prem-
ises].)

vitor's special benefit, convenience, or use of the public way, creates a danger.[8]

■ (3) California courts have held that in dealing with a young child defendants must exercise greater caution than in dealing with an adult. In *Hilyar* v. *Union Ice Co.* (1955) 45 Cal.2d 30 [286 P.2d 21], the court reversed a nonsuit in a five-and-one-half-year-old boy's action for injuries against the driver of an ice truck which struck the boy, even though the driver did not see the child and had warned children to stay away from the truck. The court stated that since the driver should have known that small children customarily played in the area in which his truck was parked, a question of fact arose as to whether he took reasonable precautions to protect the children under the circumstances.

Citing *Conroy* v. *Perez* (1944) 64 Cal.App.2d 217, 224 [148 P.2d 680], the *Hilyar* court said: " 'The presence of children is in itself a warning requiring the exercise of care for their safety.' " (45 Cal.2d at p. 36; see Prosser, Torts (3d ed.) § 33, pp. 175-176.) In *Conroy*, the court affirmed an order granting plaintiff's motion for a new trial because of erroneous instructions. The two-and-one-half-year-old plaintiff had been killed by a truck whose driver did not see the victim. The court held that the trial court erred in instructing the jury that the driver's duty of care was limited to his actual knowledge of plaintiff's position of danger.

■ (4) According to defendants, *Hilyar* and *Conroy* do not apply here because the intervening act of a third person, the driver of the car, and not any negligent act of defendants, served as the proximate cause of plaintiff's injury.

Insofar as defendants' argument involves the element of foreseeability as determinative of proximate cause, we should, as did the court in *McKay* v. *Hedger* (1934) 139 Cal.App. 266

---

[8]*Kopfinger* v. *Grand Central Public Market, supra,* 60 Cal.2d 852 [nonsuit reversed in action for injuries sustained when plaintiff slipped on piece of gristle on public sidewalk in front of defendants' market]; *Ross* v. *Kirby, supra,* 251 Cal.App.2d 267 [order denying motion for judgment notwithstanding verdict affirmed after plaintiff recovered damages for fall over 2½-inch-high drainage berm, half of which was located on public parking lot serving customers invited to cross berm and use rear door of defendant's restaurant, where berm constructed by city for special benefit of defendant's property]. See also, *Sexton* v. *Brooks* (1952) 39 Cal.2d 153, 157 [245 P.2d 496]; *Granucci* v. *Claasen* (1928) 204 Cal. 509, 512 [269 P. 437, 59 A.L.R. 435]; *Nickelsburg* v. *City of New York* (1942) 263 App.Div. 625, 626 [34 N.Y.S.2d 1]; *Kniffley* v. *Reid* (1941) 287 Ky. 212, 215 [152 S.W.2d 615]; *Herron* v. *City of . Youngstown* (1940) 136 Ohio St. 190, 194 [24 N.E.2d 708]; *Joel* v. *Electric Research Products, Inc.* (2d Cir. 1938) 94 F.2d 588, 590; see generally, notes, 62 A.L.R. 1067-1073; 59 A.L.R. 441-443.

[34 P.2d 221], approach the problem as one of determining the nature of the duty and the scope of the risk of the negligent conduct.[9] The court in *McKay* affirmed a verdict for a five-year-old plaintiff who was struck by a car as he ran from behind defendant's illegally double-parked ice truck, unattended on a summer day, its ice door wide open. The court held that the driver should have known that children would be attracted to the truck. The court stated: "[The driver] should have foreseen that some of them might run from behind the ice truck where they were hidden from the view of any motorist approaching from the east. . . . Vehicular traffic is to be expected on a city street. In other words, we conclude that any reasonably prudent person should have anticipated the exact accident which happened had he thought of the results likely to occur." (*Id.* at 274.)

Nor can *McKay* be distinguished from the instant case because defendants' truck was not illegally parked as was the truck in *McKay*. First, the *McKay* reasoning did not rest on the locus of the truck. Second, the injury actually incurred in that case did not lie within the scope of harm which the traffic ordinance sought to prevent. (See *Mackey* v. *Spradlin, supra,* 397 S.W.2d 33, 37 fn. 1.) And third, a defendant's duty of due care extends beyond mere compliance with the traffic laws.

Similarly rejecting the contention that the act of a third person breaks the chain of causation in such a situation as the instant one, the court in *Brousseau* v. *Carnation Co.* (1955) 137 Cal.App.2d 570 [290 P.2d 588], reversed a nonsuit entered for the driver-salesman and ice cream company defendants in an action for injuries which occurred when the plaintiff child was pushed under the wheels of defendants' trailer from which young ladies threw cups of ice cream to bystanders. "If the realizable likelihood that a third person

[9] "[I]n cases involving an intervening cause, the question of foreseeability is often involved in both the determination of duty and proximate cause." (Note, 12 U.C.L.A. L.Rev. 1262 fn. 7 (1965) ; see *Amaya* v. *Home Ice, Fuel & Supply Co., supra*, 59 Cal.2d 295, 308.)

"In a concrete situation an act or omission is negligent because it carries an undue threat of harm from some more or less specific kind of risk. . . . [A] professional generation ago the "cause" reasoning was used almost exclusively. But the problem is not one of cause in any meaningful sense and the scope of the risk analysis has been gaining favor in recent years with both courts and commentators." (Harper & James, Torts (1956 ed.) pp. 1022-1023; see *Palsgraf* v. *L.I.R. Co.* (1928) 248 N.Y. 339, 346 [162 N.E. 99, 59 A.L.R. 1253]; *Waube* v. *Warrington* (1935) 216 Wis. 603, 610-611 [258 N.W. 497, 98 A.L.R. 394]; Rest., Torts (1948 Supp.) 650-652.)

may· act in a particular manner is the hazard or one of the hazards which makes the actor negligent," the court said, "such an act whether innocent, negligent, intentionally tortious or criminal docs not prevent the actor from being liable for the harm caused thereby." (*Id.* at 573.) The duty to avoid the creation of an unreasonable risk of harm encompasses those risks where the harm is effected by the foreseeable conduct of a third person. (*Stewart* v. *Cox* (1961) 55 Cal.2d 857, 863-864 [13 Cal.Rptr. 521, 362 P.2d 345]; *Richardson* v. *Ham* (1955) 44 Cal.2d 772, 777 [285 P.2d 269]; *Eads* v. *Marks* (1952) 39 Cal.2d 807, 812 [249 P.2d 257]; *Mosley* v.. *Arden Farms Co.* (1945) 26 Cal.2d 213, 218-219 [157 P.2d 372, 158 AL.R. 872]; Rest.2d Torts, §§ 302, 302A, 431, 437, 449; Harper & James, Torts (1956 ed.) p. 1054.)

Having set forth representative cases which support the above principles, we undertake the application of the precepts to the instant case; we point out that the trial court erred in withdrawing from the jury the question whether defendants breached their duty to plaintiff.

■ (1) *The driver undertook to direct plaintiff's activities* by arranging to meet him up the street across from his house, thereby creating a relationship which established a duty of due care. A jury could reasonably have found that the driver, in giving directions that exposed the child to obvious danger, failed to discharge this duty of due care. The driver knew the location of plaintiff's home; hence the driver knew that his instructions compelled a four-year-old child to cross the street in the middle of the block against expectably heavy traffic on a winter evening. The jury could have concluded that the driver acted negligently in giving such instructions.

Likewise, the jury could have reasonably concluded that the proper discharge of the driver's duty to the child entailed at least a warning such as, "Don't run across the street without looking for cars," or "Stay on the sidewalk and when you get to the truck call to me and I will help you cross, or bring the doughnut over to you." Further, the jury could have reasonably found that, having directed the child as he did, the driver in the exercise of ordinary care should not have abandoned his lookout for the child during the short period of time that elapsed following their first encounter.

■ (2) *The driver owed to plaintiff the duty of care due a business invitee.* By soliciting the child's business and arranging to meet him at the appointed location, the driver expressly invited the child to become his customer. The driver,

as invitor, therefore, may be held to the duty of exercising such reasonable care for plaintiff's safety in the immediate vicinity of the truck as would be expected of an ordinarily prudent man in the same circumstances. A jury could have found that the driver should have maintained his lookout for the child throughout the seven-minute period which elapsed between the driver's direction to the child and the accident. It could have found the driver negligent in failing to take reasonable measures to protect the child from foreseeable harm, such as observing him before he stepped into the street directly across from the truck and (1) telling the child to wait, then directing him across when the street was clear, (2) halting the automobiles to enable the child to cross safely, (3) bringing a doughnut across the street to the child, or (4) lawfully driving his truck on the left side of the street.[10]

■ (3) *The driver was obliged to exercise greater caution as to plaintiff child than as to an adult.* In discharging his duty of due care the driver should have taken into consideration, not merely the normal characteristics of four-year-old children, but his actual knowledge of plaintiff's heedlessness of the hazards of traffic; the driver acquired that knowledge when, before their first encounter, he saw the child dart across Iowa Avenue. The trial court should have left to the jury the question whether, in view of the reasonably foreseeable be-

---

[10]It may be argued that defendants, as business invitors, cannot incur a duty to protect invitees from injury on a public street. We have pointed out, however, that the jury could have found that the dangerous circumstances which caused the injury were created by defendants. Moreover, the authorities we have cited above show that the concept of "business premises" may no longer be mechanically defined by the geographical area in which the invitor holds a property interest. An invitor may be liable for an injury, whether it occurs on his property or on a common passageway or on an adjacent sidewalk or street being used for his special benefit, if, and only if, the injury is caused by a dangerous condition, or unreasonable risk of harm, within the invitor's control. (See fns. 5 and 6, supra.)

Defendants' business consisted of selling bakery goods from a truck. In coming to the truck for the convenience of defendants, patrons used the public streets and sidewalks as means of access for the special benefit of defendants' business. Defendants may therefore be held liable for an injury occurring to their customer in the immediate vicinity of the truck if the circumstances causing the injury are within the range of defendants' reasonable supervision and control. Obviously, defendants are not insurers for all accidents occurring in areas through which their truck passes. They may not be held liable, for example, for a fall caused by an unobserved defect in a sidewalk next to which their truck stops. They may be responsible, however, for harm occurring in the immediate vicinity of the truck, wherever it may be stopped at a given time, if the harm is of the kind that defendants could have prevented by exercising reasonable care for the safety of their customers.

havior of the child, defendants exposed him to an unreasonable risk of harm.

■ (4) *A jury could have found that the driver's negligence was a proximate cause of injury because of the foreseeability of the intervening force.* Like the court in *McKay* v. *Hedger, supra,* 139 Cal.App. 266, we believe that the jury could reasonably have found that the driver should have foreseen the very accident which actually occurred. Swift and heavy traffic on a through street in a residential neighborhood at the height of the evening rush hour is to be expected. Defendant knew that plaintiff was not only a child of tender years, but one who had demonstrated his disregard of the hazards of traffic; defendant knew the location of plaintiff's home; defendant knew that to reach the assigned location plaintiff would be compelled to cross the street in the middle of the block; defendant failed to bring his truck or the doughnut to the left side of the street, a precaution he sometimes took to insure the safety of children and elderly adults.

The chance that the child would carelessly run across the street as he did was foreseeable. The chance that a motorist, driving in the gathering twilight, would then fail to see the child running across the street in the middle of the block from behind a parked car was more than foreseeable; it was likely. But just as we may not rely upon our private judgment on this issue, so the trial court may not impose its private judgment upon a situation, such as this, in which reasonable minds may differ.

The judgment is reversed.

Traynor, C. J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Presiding Justice Wood in the opinion prepared by him for the Court of Appeal.